**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Gino P. ZANIN and Phyllis K. Zanin,
Defendants–Appellants.**

**Nos. 86–2633, 86–2634.**

United States Court of Appeals,
Seventh Circuit.

Argued April 24, 1987.

Decided Sept. 28, 1987.

As Amended Sept. 29, 1987.

---

Paul A. Wagner, Sheila M. Murphy, The Murphy Law Firm, Chicago, Ill., for defendants-appellants.

Scott T. Mendeloff, Asst. U.S. Atty., Anton R. Valukas, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before BAUER, Chief Judge, and CUDAHY and FLAUM, Circuit Judges.

BAUER, Chief Judge.

Gino and Phyllis Zanin were convicted of various drug-related offenses. Both defendants contend that the evidence was insufficient to sustain their convictions. In addition, they object to a statement made by the prosecutor during closing argument and the trial court's denial of Phyllis Zanin's motion to sever her trial from her husband's. We reject defendants' challenges and affirm both convictions.

I.

Gino Zanin operated a narcotics distribution network from his family home in Chicago. After a search of the Zanin home revealed a scale for weighing narcotics and $7,000 in cash, agents installed an authorized wiretap in the Zanin's telephone. The agents intercepted a number of calls relating to the collection of narcotics debts and the delivery of narcotics. On the day the

wiretap was installed, agents impounded a 1977 International Truck, a consensual search of which revealed nearly 800 pounds of marijuana and 500 grams of heroin. It was later revealed that Gino Zanin had apparently hired the drivers to transport the drugs from Texas to Chicago.

The indictment charged eight individuals, including the Zanins, with various narcotics violations. Co-indictees Julio Courbassier, Enrique Esparza, Maria Carmen Santamaria, Carlita "Carli" Solis, Ignacio Otero and Carlos Castillo pled guilty prior to trial. After Phyllis Zanin's motion to sever her trial from her husband's was denied, the Zanins proceeded to trial together. The government's case was based, in large part, on tapes of 121 telephone conversations which were introduced into evidence.

Gino Zanin was found guilty of twenty-seven counts of distributing controlled substances, 21 U.S.C. § 841(a)(1); using the telephone to facilitate distribution of narcotics, 21 U.S.C. § 843(b); conspiracy to violate section 843(b), 21 U.S.C. § 846; travelling across state lines to engage in racketeering activity, 18 U.S.C. §§ 2 and 1952; and of operating a continuing criminal enterprise, 21 U.S.C. § 848. Phyllis Zanin was charged with conspiracy, 21 U.S.C. § 846, and use of the telephone to facilitate drug distribution, 21 U.S.C. § 843(b). Her defense included a good deal of testimony regarding her reputation in the community and charitable work. Phyllis Zanin was convicted of seven counts of using the telephone to facilitate distribution of narcotics, in violation of 21 U.S.C. section 843(b). She was acquitted of conspiracy and sentenced to five years of probation in addition to eighty hours of community service.

On appeal the Zanins contend that they were deprived of a fair trial when the prosecutor urged the jury to consider "the children of the families where [Gino Zanin] was selling heroin to." The Zanins also argue that the evidence was insufficient to sustain their convictions. In addition, Phyllis Zanin complains of the court's denial of her motion for severance.

## II.

*Closing Argument*

■ During closing argument, the government prosecutor asked the jury to consider "the children of the families where [Gino Zanin] was selling heroin to...." [1] (Tr. 1098). In deciding whether a prosecutor's comments are so prejudicial as to require reversal of a conviction, we have noted:

> The question to be decided is whether ... statements were so inflammatory and prejudicial to the defendant petitioner as to deprive him of a fair trial and thus deprive him of his liberty without due process of law as proscribed by the Fourteenth Amendment.

*United States ex rel. Clark v. Fike*, 538 F.2d 750, 760 (7th Cir.1976), *cert. denied*, 429 U.S. 1064, 97 S.Ct. 791, 50 L.Ed.2d 781 (1977) (quoting *United States ex rel. Kirk v. Petrelli*, 331 F.Supp. 792, 795–96 (N.D. Ill.1971), *aff'd*, 492 F.2d 1245 (7th Cir. 1974)). The Supreme Court has clarified our task on review, noting that the court should focus on the "probable effect the prosecutor's response would have on the jury's ability to judge the evidence fairly." *United States v. Young*, 470 U.S. 1, 12, 105 S.Ct. 1038, 1045, 84 L.Ed.2d 1 (1985).

In *United States v. Zylstra*, 713 F.2d 1332 (7th Cir.), *cert. denied*, 464 U.S. 965,

---

**1.** The prosecutor's comment, in fuller context, follows:

I guess ultimately the defense offered by Miss Murphy for Phyllis Zanin is based on her religiosity ... [a]nd her being a mother. You have heard about all of these children.

\* \* \* \* \* \* \*

The four children were in the house where the cocaine trafficking was going on, the house that Mrs. Anelli didn't have any objection to.

The law did not ask Phyllis Zanin to throw out her husband or to stop loving him or to hand him in. The law asked her to have a little bit of dignity. Say at least, keep it out of the house. Keep it away from the children. And she didn't do that.

Was that the good mother that you heard about? And what about the families that he was selling the heroin to?

Tr. 1097–98.

104 S.Ct. 403, 78 L.Ed.2d 344 (1983), we approved a remark strikingly similar to the one here. The prosecutor in *Zylstra* referred to defendants' importing "200,000 pounds of marijuana into our country for distribution to our children and friends." After considering the comment in context, we determined that the prosecutor was referring to the "threat to *our society* as a whole ('families' and 'friends' used as generalities) rather than to any individual's particular family and friends." *Id.* at 1340. *Accord United States v. Peco*, 784 F.2d 798 (7th Cir.), *cert. denied,* — U.S. ——, 106 S.Ct. 2281, 90 L.Ed.2d 723 (1986) (nothing inappropriate in prosecutor's comment that cocaine is "the greatest threat to the lives and well-being of our children. * * * This is death, and people who deal in it are merchants in death."). *Zylstra* thus implicitly found references to individuals' particular family and friends to be inappropriate. Defendants argue that the prosecutor's comment here referred to an individual's particular family and to the jurors' children specifically. We disagree.

Discussing the children of the families to which heroin was sold was no more of a particularized comment than discussing the "threat posed to our children and friends" in *Zylstra*. We have noted, most recently in *Peco*, 784 F.2d at 810, that a prosecutor may "impress upon the jury the seriousness of the charges and a comment on the gravity of the drug problem in the country is certainly not inappropriate." *Id.* (quoting *Zylstra*, 713 F.2d at 1340). According-ly, we find nothing inappropriate in the prosecutor's statement.

## Continuing Criminal Enterprise

■ Gino Zanin was convicted of operating a continuing criminal enterprise, in violation of 21 U.S.C. § 848(b)(2)(A).[2] To violate the section, a defendant must have acted "in concert with five or more other persons with respect to whom such person occupies a position of organizer, a supervisory position or any other position of management...."[3] The government charged that Gino Zanin supervised the activities of co-indictees Julio Courbassier, Maria Carmen Santamaria, Carlita "Carli" Solis, Ignacio Otero, Enrique Esparza, Ubaldo Esparza–Corral, Lino Arrendondo Celio and Phyllis Zanin. Defendant's challenge to the sufficiency of the evidence must be rejected if we find, "after viewing the evidence in a light most favorable to the prosecution, [that] any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *see also United States v. Perlaza*, 818 F.2d 1354, 1358 (7th Cir.1987). Defendant concedes that he acted in concert with five or more people but contends that the evidence was insufficient to establish that he supervised, managed or organized their acts as required by the statute (Def.Br. at 18).

Defendant also admits that he supervised the activities of Julio Courbassier (Def.Br. at 20). The evidence of Gino Zanin's super-

2. § 848 Continuing criminal enterprise

(b) For purposes of subsection (a) of this section, a person is engaged in a continuing criminal enterprise if—

(1) he violates any provision of this subchapter or subchapter II of this chapter the punishment for which is a felony, and

(2) such violation is a part of a continuing series of violations of this subchapter or subchapter II of this chapter—

(A) which are undertaken by such person in concert with five or more other persons with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management, and

(B) from which such person obtains substantial income or resources.

3. Defendants allege that one of the predicate violations used to show a continuing criminal enterprise was the result of an illegal search and seizure. A continuing criminal enterprise requires proof of only three separate federal narcotics offenses. The allegedly illegal search was only one of twenty-nine separate acts that furnished the basis of Gino Zanin's convictions for operating a continuing criminal enterprise, 21 U.S.C. § 848. We need not address this issue since even a favorable decision would not affect Gino Zanin's conviction under section 848. *Cf. United States v. Valenzuela*, 596 F.2d 1361 (9th Cir.), *cert. denied*, 444 U.S. 865, 100 S.Ct. 136, 62 L.Ed.2d 88 (1979) (declining to consider allegedly improper count as basis for CCE conviction when remaining eight counts sufficed to show continuing series of violations).

vision over the remaining members of the enterprise consisted of 121 monitored telephone conversations admitted into evidence. In several conversations, Maria Carmen Santamaria kept Gino Zanin apprised of the amount of money she had collected for Zanin and the number of customers she had found. Gino Zanin called Carlita "Carli" Solis to make a delivery for him when Santamaria was unable to do so. In a conversation with Ignacio Otero, Zanin and Otero discussed narcotics that Otero had delivered in Puerto Rico apparently at Gino Zanin's direction. The two occupants of the impounded truck, Ubaldo Esparza–Corral and Lino Arrendondo Celio, were apparently hired by Gino Zanin. In addition, Phyllis Zanin often appeared to operate under Gino's direction.

Defendant argues that the conversations establish only that the defendant acted in concert with the others, and fail to establish that Gino occupied any "superior" position. Conversations regarding drug transactions are rarely clear. A factfinder must always draw inferences from veiled allusions and code words. Here, the jury was warranted in drawing the inference that at least four individuals, in addition to Courbassier, operated at Gino Zanin's direction. A jury's verdict must be upheld when supported by reasonable inferences. *United States v. Moya,* 721 F.2d 606, 610 (7th Cir.1983), *cert. denied,* 465 U.S. 1037, 104 S.Ct. 1312, 79 L.Ed.2d 709 (1984).

*Severance*

■ Phyllis Zanin argues that the trial court erred in refusing to sever her trial from her husband's. In determining whether to grant a motion to sever, a court should carefully balance the public interest in having joint trials against the potential for undue prejudice or confusion. *See United States v. Rivera,* 825 F.2d 152, 159 (7th Cir.1987); *United States v. Peters,* 791 F.2d 1270, 1287 (7th Cir.), *cert. denied,* — U.S. —, 107 S.Ct. 168, 93 L.Ed.2d 106 (1986). The court's determination of this

balancing process is subject only to our review for abuse of discretion. *United States v. Pavelski,* 789 F.2d 485, 491 (7th Cir.), *cert. denied,* — U.S. —, 107 S.Ct. 322, 93 L.Ed.2d 295 (1986).

■ A joint trial will always raise the specter of jury confusion, but to obtain severance, a defendant must show that he or she cannot get a fair trial without it. *United States v. Percival,* 756 F.2d 600, 610 (7th Cir.1985). Since the trial court administered the appropriate limiting instructions, we must determine only "whether the jury [could] follow the court's limiting instructions so as not to attribute evidence to a defendant against whom it is inadmissible." *United States v. Kendall,* 665 F.2d 126, 137 (7th Cir.1981), *cert. denied,* 455 U.S. 1021, 102 S.Ct. 1719, 72 L.Ed.2d 140 (1982).

■ This is not a case of interlocking confessions. Phyllis Zanin's argument is merely that the jury would impute guilt by association with her husband, against whom the evidence was stronger. The court gave two limiting instructions. The first was general, explaining that each defendant's guilt must be determined separately. The second related solely to conspiracy and explained that to find a defendant guilty of conspiracy, only the acts and statements of that particular defendant may be considered. The jury acquitted Phyllis Zanin of conspiracy while convicting her husband of the same offense. It is plain that the jury was able to follow the limiting instructions and that Phyllis Zanin was not deprived of her right to a fair trial by the court's denial of her motion to sever.

*Sufficiency of evidence against Phyllis Zanin*

■ Phyllis Zanin also contends that the evidence was insufficient to sustain her convictions under section 843(b) for using the telephone to facilitate drug transactions.[4] Again, we will reverse a judgment

---

**4.** § 843 Communication facility

(b) It shall be unlawful for any person knowingly or intentionally to use any communication facility in committing or in causing

or facilitating the commission of any act or acts constituting a felony under any provision of this subchapter or subchapter II of this chapter. Each separate use of a communica-

entered on a jury verdict only if we determine, after viewing the evidence in a light most favorable to the government, that no reasonable factfinder could have determined guilt beyond a reasonable doubt. *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789. Phyllis Zanin argues that all conversations in which she participated are susceptible to an innocent explanation. This may or may not be true—but it is irrelevant. The existence of an innocent explanation does not foreclose a jury from finding guilt beyond a reasonable doubt. The jury was entitled to draw reasonable inferences from the conversations. *See United States v. Beniach*, 825 F.2d 1207, 1211 (7th Cir.1987). Phyllis Zanin often arranged for Julio Courbassier to get cash from the Zanin house to pay a third party; she expressed fear when she heard that her husband had been detained by federal agents at the airport and relief when he explained that they were not from the Drug Enforcement Agency; she warned her husband not to "bring anything home" when she saw a police car near their home. In all, the jury was entitled to infer that Phyllis Zanin knew of her husband's activities and participated in them.

The convictions of both defendants are AFFIRMED.

tion facility shall be a separate offense under this subsection. For purposes of this subsection, the term "communication facility" means any and all public and private instrumentalities used or useful in the transmission of writing, signs, signals, pictures, or sounds of all kinds and includes mail, telephone, wire, radio, and all other means of communication.