THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROLAND SHEPARD, Defendant-Appellant.

First District (1st Division)   No. 82—0096

Opinion filed May 9, 1983.

Daniel F. Murray, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Paula Carstensen, and Thomas J. Finn, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GOLDBERG delivered the opinion of the court:

After a jury trial, Roland Shepard (defendant) was convicted of rape, armed robbery, two counts of home invasion, attempted murder, and three counts of aggravated battery. Defendant was sentenced to 60 years' imprisonment for each offense, all to run concurrently. He appeals.

Complainant testified that on June 16, 1981, a man she identified as defendant came to her door. He was wearing a yellow hard hat, a white shirt and black pants. Defendant told her he had been sent by her husband to look at the gas meter. She let him in. He grabbed a flashlight she was holding and hit her on the side of her face. He de-

manded money. She gave him $55 or $60. He pushed her into the bedroom, undressed her and raped her. Defendant told her he had a gun. After the rape, defendant demanded guns. He took two shotguns, a pistol, and shotgun shells and left. This took about half an hour.

Complainant's father-in-law testified he was working in the garage. Complainant ran out from the apartment. She was crying and pale. She had a bruise on her face. She told him she had been raped and that the assailant went toward North Avenue. They went inside the building and called the police.

Michael Goy testified that on the afternoon in question at 1 to 1:30, he was driving on Keeler Avenue crossing North Avenue. He noticed a man, whom he identified as defendant, wearing a yellow hat, white shirt, and black pants. Defendant was carrying a long parcel from which a gun butt protruded. The witness was eight to 10 feet from defendant. He watched defendant walk into a gangway. The witness drove down an alley and saw defendant "come out" of the gangway without the parcel and without the hard hat. The witness then walked into the gangway. He saw two guns up against a wall. He identified two shotguns in court as the guns he recovered in the gangway. Complainant identified these guns as the property of her husband. An "old tablecloth" was wrapped around the guns. The witness rewrapped the guns and put them in his car. He saw squad cars in the area. He turned the guns over to the police.

Police officer John Scheckells testified he talked to complainant and put out a "flash message" describing the offender. The officer then "toured the area." He observed Mr. Goy flagging down a police car. He stopped and Mr. Goy gave him the shotguns. The witness found the yellow hard hat in the gangway where Mr. Goy had found the guns. He identified a hat as the hat he found in the gangway.

Chicago police officer John Amoroso testified he was called to search for the offender. He observed defendant driving a blue Mercury. He followed defendant into a gas station. The officer demanded defendant's driver's license. While he was observing the license, defendant knocked him to the ground and pulled out the officer's revolver. Defendant told the officer, "I'm going to kill you. You're not taking me in for nothing." As they struggled for the gun, more police officers arrived and pulled defendant off the witness. The witness was so enraged he hit the defendant twice before being restrained by the other officers. The witness saw a .22-caliber revolver in defendant's car. This gun was identified as belonging to complainant's husband.

Chicago police officer Korhonen testified he was touring the area searching for the offender. He saw Officer Amoroso wrestling with

defendant at a gas station with the officer's gun out of its holster. Defendant was holding the handle of the gun and Officer Amoroso had his hands on the cylinder. The gun was pointed at the face of Officer Amoroso. Officer Korhonen got on top of the two men and wedged his hand against the hammer to prevent the gun from firing. The trigger was pulled but the hammer struck the witness in the web of the right hand. The hammer did not hit the firing pin. Defendant was subdued and arrested.

Defendant testified he has never had a yellow hard hat. On the day of the rape, defendant was visiting his ex-wife and stopped for a couple of hours at a factory where he formerly worked. He stopped at the gas station because his car became overheated. Officer Amoroso asked him for his driver's license. As he gave the officer his license, he noticed his car begin to roll. He tried to jump in and put it in park. Officer Amoroso pulled out his gun and struck defendant in the back of the head. Defendant grabbed the officer's arm and they began to wrestle. During the scuffle another officer came and knocked defendant unconscious. After a few seconds he awoke to find himself handcuffed and being beaten. He was taken to the police station where he was questioned and beaten some more. Defendant was admitted to the hospital. He remained there from three to five days.

Defendant denied raping the complainant, trying to kill Officer Amoroso, or having a gun in his car. On cross-examination defendant admitted having been convicted of rape and deviate sexual assault in 1975.

On rebuttal, Detective Michael Heridogt testified he interviewed defendant on June 16, 1981, at the 14th District lockup. After advising defendant of his *Miranda* rights, defendant told the detective he had visited a woman whom he knew as "Delores." Defendant gave the detective "Delores'" address which was complainant's address. Defendant told the detective he had intercourse with "Delores" on numerous occasions. "Delores" told defendant she was having some problems with her husband and asked him to take the guns out of the house. Defendant took the guns and secreted them in a gangway.

The jury had no obligation to believe the defendant's alibi which was uncorroborated and discredited by contrary evidence. (*People v. Tennant* (1976), 65 Ill. 2d 401, 412, 358 N.E.2d 1116, *cert. denied* (1977), 431 U.S. 918, 53 L. Ed. 2d 229, 97 S. Ct. 2184.) In our opinion the evidence proves defendant's guilt beyond reasonable doubt and to an overwhelming degree. No point is made by defendant regarding proof beyond a reasonable doubt.

I

■■ Defendant complains of improper final arguments by the prosecution:

(1) Reference to defense counsel as using "smoke screens" to confuse the jurors. This occurred twice but no objection was made to this argument. Also the prosecutor referred to defendant as a "dog." No objection was made to this argument. Thus, these points are waived. *People v. Jackson* (1981), 84 Ill. 2d 350, 358-59, 418 N.E.2d 739.

(2) The prosecutor said the defense attorney's role was "to beat this case so that animal can walk out of here laughing at you ***." He said the jury should not be afraid of defendant and they could "look that lying raping attempt murdering dog in the eye and tell him what you think of him." In these instances, the trial court sustained objections by defense counsel and instructed the jury to disregard the objectionable matter. These errors were therefore cured. *People v. Baptist* (1979), 76 Ill. 2d 19, 30, 389 N.E.2d 1200.

(3) The prosecutor stated:

"Officer Korhonen could have killed him right then and there, he would have been justified, he would have saved all the tax payers' money if he did kill him right there and he could have done it because he was trying to kill Officer Amoroso. He would have done us all a favor by killing him there."

■■ We find this statement by the prosecutor to be reprehensible and uncalled for. This type of argument constitutes an insult to the court and to the dignity of the trial bar. The situation is aggravated by the fact that the evidence of guilt is overwhelming. Against overpowering evidence of guilt, we have simply an alibi by defendant which was absolutely uncorroborated and which is negated by the rebuttal testimony such as that of Detective Heridogt. There was no need for the prosecutor to engage in these ugly tactics. Perhaps some reports to the Attorney Registration and Disciplinary Commission are required to provide an antidote for this virulent condition. In view of the overwhelming nature of the evidence, we are impelled to conclude that defendant was not prejudiced by the improper argument. (*People v. Baptist* (1979), 76 Ill. 2d 19, 29-30.) Also, defendant has failed to show that any or all of the assailed arguments constituted a material factor in the conviction. *People v. Clark* (1972), 52 Ill. 2d 374, 390, 288 N.E.2d 363.

(4) The trial court instructed the jury that remarks of counsel were not evidence. (Illinois Pattern Jury Instruction (IPI), Criminal, No. 1.03 (2d ed. 1981); see *People v. King* (1977), 66 Ill. 2d 551, 559, 363 N.E.2d 838, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181,

98 S. Ct. 273.) Also, the trial judge instructed the jury that the facts were to be determined solely from the evidence before them. IPI Criminal No. 1.01; *People v. Olejniczak* (1979), 73 Ill. App. 3d 112, 121-22, 390 N.E.2d 1339.

(5) It is manifest here that the evidence of guilt is so overwhelmingly strong that these assailed arguments were harmless error beyond any reasonable doubt. *People v. Skorusa* (1973), 55 Ill. 2d 577, 585, 304 N.E.2d 630, cited in *People v. Battles* (1981), 93 Ill. App. 3d 1093, 1099, 418 N.E.2d 22. See also *People v. Warmack* (1980), 83 Ill. 2d 112, 128-29, 413 N.E.2d 1254.

Only these reasons restrain us from reversing the conviction before us.

## II

■ In urging ineffective assistance of counsel, defendant cites trial counsel's "lack of preparation," his failure to remember the substance of a witness' testimony during his opening statement, and his failure to develop an alibi defense in accordance with defendant's testimony.

In Illinois a claim of ineffective representation by counsel is judged as follows (*People v. Haywood* (1980), 82 Ill. 2d 540, 543-44, 413 N.E.2d 410):

> "[I]it must be established that counsel was actually incompetent in the performance of his duties and that substantial prejudice resulted from such incompetency, without which the results of the trial would have been different. [Citations.] However, if the alleged incompetency is a matter of trial tactics or strategy, which are purely matters of professional judgment, such allegations cannot support a claim of ineffective representation. [Citations.]"

Furthermore, the competence of defense counsel will be determined through an examination of the totality of the circumstances and the record as a whole. *People v. Davis* (1981), 103 Ill. App. 3d 792, 796, 431 N.E.2d 1210.

In the case at bar, at the end of trial, the trial judge stated to defense counsel, "Let me say this, Mr. Sherwin, you are a fine lawyer." We find this unsolicited remark by the trial judge, who diligently watched and listened to the entire proceedings, to be quite informative.

In any event, because of the overwhelming nature of the evidence against defendant, we do not see how any alleged shortcomings of the defense counsel could possibly have affected the outcome. As regards

failure of defendant's counsel to present witnesses to bolster defendant's alibi, it is painfully obvious that no such evidence existed. In any event, any such "failure" is merely an element of an attorney's trial tactics which "cannot support a claim of ineffective representation." (See *People v. Haywood* (1980), 82 Ill. 2d 540, 544.) We find no merit in this contention. No counsel for defendant could conceivably have changed the outcome of the instant trial.

### III

In imposing sentence, the trial judge stated he was sentencing defendant to "sixty years, Department of Corrections, the extended term concurrent to all of the Class X felonies that you stand convicted before the bar of this court." The Orders of Sentence and Commitment as written show 60 years prison terms for each of the rape, armed robbery, two counts of home invasion, the attempted murder and also for three counts of aggravated battery.

██ █ Aggravated battery is a Class 3 felony. (Ill. Rev. Stat. 1981, ch. 38, par. 12—4(e).) The maximum sentence is five years (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—1(a)(6)), and the extended term is 10 years (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—2(a)(5)). Therefore, the sentences of 60 years for the three aggravated battery convictions are improper and will be vacated. However, all other crimes for which defendant stands convicted are Class X felonies. Defendant was subject to extended terms because he had been convicted of previous Class X felonies within 10 years prior to the instant convictions. (Ill. Rev. Stat. 1981, ch. 38, par. 1005—5—3.2(b)(1).) The 60-year sentences for the Class X felonies are within the statutory limits for an extended term. Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—2(a)(2).

We find the trial judge did not abuse his discretion in imposing the maximum 60-year sentence of the Class X felonies. (See *People v. Willingham* (1982), 89 Ill. 2d 352, 364, 432 N.E.2d 861.) Therefore, the sentences for the Class X felony convictions are affirmed.

For these reasons the judgment appealed from is affirmed in all respects except the sentences for aggravated battery are vacated.

Finally, the State's motion for fees in the sum of $75 is granted. *People v. Nicholls* (1978), 71 Ill. 2d 166, 374 N.E.2d 194.

Affirmed in part, vacated in part.

BUCKLEY, P.J., and CAMPBELL, J., concur.