**UNITED STATES of America ex rel. Gilbert CRIST, Petitioner,**

v.

**Michael LANE, Respondent.**

**No. 83 C 1339.**

United States District Court, N.D. Illinois, E.D.

Dec. 12, 1983.

James J. Doherty, Cook County Public Defender, Hugh Stevens, Asst. Public Defender, Chicago, Ill., for petitioner.

Neil F. Hartigan, Atty. Gen., David Bindi, Asst. Atty. Gen., for respondent.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Gilbert Crist ("Crist"), a prisoner at Menard Correctional Center, has brought this habeas corpus proceeding under 28 U.S.C. § 2254 against Illinois Department of Corrections Director Michael Lane ("Lane"). On August 5, 1983 this Court issued its memorandum opinion and order (*"Opinion I,"* 570 F.Supp. 999), denying the writ on what it believed to be the only issue posed: whether the prosecutor had violated Crist's Fifth Amendment[1] right against self-incrimination by his comments in closing argument.

Crist now moves for reconsideration on the ground asserted in his proposed amended petition, pointing out his motion for leave to file that amendment had been filed before Opinion I issued.[2] On September 16 this Court set Crist's additional claim for briefing. If reconsideration is granted, the issues are presented on cross-motions for summary judgment.

Crist's additional claim is the state prosecutor's improper comments on rebuttal deprived him of a fair trial as guaranteed by the Due Process Clause. This Court does not lightly make the finding of "egregious misconduct" required by *Donnelly v. De-Christoforo,* 416 U.S. 637, 647, 94 S.Ct. 1868, 1873, 40 L.Ed.2d 431 (1974). But here the prosecutor's language and conduct were indeed so outrageous and so inflammatory that relief must be granted. Be-

cause that conclusion—though compelled—requires detailed discussion and analysis, this opinion launches on that process.

### Facts[3]

There is no dispute as to any of the relevant facts. According to Crist's state appellate brief 7–8, the complainant and only eyewitness Anthony Russell ("Russell") testified this way:

At approximately 5:30 p.m. on June 27, 1980 Anthony Russell was accosted by a man in the front hall of a Chicago housing project building at 1510 West 13th Street. (R. 96, 115–116) Russell testified it was a sunny day and the lights were on in the building. (R. 97–98) Russell was carrying a bag of clothing belonging to his girlfriend, who was then upstairs. (R. 96, 127)

Russell had just entered the building when he heard a voice say, "stop, come here." (R. 97–98) He turned around and saw a man about five feet away walking toward him and pointing a gun at him. (R. 98–99) Russell immediately threw the bag at the man and ran to the rear entrance. (R. 101, 122–123) Russell testified it would be fair to say he only got a quick glimpse of the man and it really wasn't enough time for him to get a good look. (R. 128–131) At the same time, he testified that the gun was a .22 caliber pistol, kind of old looking, with paint chipped off the barrel. (R. 99–100)

As Russell ran to the rear entrance of the building, he heard four or five shots. (R. 102) He ran out the rear entrance, heard another shot, and felt a pain in his back. (R. 102) Russell kept on running until he was about 100 feet from the

---

**1.** Following conventional (though not purist) usage, this opinion will refer to the underlying Bill of Rights provisions rather than to the Fourteenth Amendment, which (1) perforce controls this action based on state action and (2) substantively incorporates those Bill of Rights guaranties.

**2.** Crist's counsel apparently believed the filing of his motion put the proposed amendment itself at issue, and his summary judgment memorandum did argue the additional claim. Lane however did not respond to that portion of Crist's argument, and as a result of the procedural confusion Opinion I focused only on the claim in the unamended petition.

**3.** This statement borrows freely from *Opinion I's* factual summary.

building where he thought he was out of the range of fire. (R. 123–124) At that time, he felt very nauseated and dizzy. He had a pain in his back and a lump in his stomach. Blood was coming out of his mouth. (R. 103, 124)

Russell turned around to go back to the building and saw the offender come out. (R. 104) The man shouted "get some business," fired twice in the air, and ran off carrying the bag that Russell had thrown at him. (R. 105, 125) Russell testified he got about a 10 second look at the man outside the building. (R. 105) After the offender ran off, friends of Russell's named Drew and Michael Lee helped Russell back into the building where he fell down. (R. 105–106, 124, 126) Drew and Lee had seen the whole thing. (R. 126) Sometime later, the police arrived and took Russell to the hospital. (R. 106)

Some days later Russell told police he had received a telephone call informing him of the whereabouts, vehicle, license number and clothing of his assailant. Then police arrested Crist near the location and wearing the clothing described, and Russell identified Crist in a lineup.[4] Michael Lee ("Lee") said Crist was the assailant when he viewed him through one-way glass, but that identification was quashed by the trial judge as made under impermissibly suggestive circumstances.

Crist was tried by a jury on seven counts: attempt murder, armed robbery, armed violence and four counts of aggravated battery. At the trial Russell and two police officers testified for the state. As was its right, the defense then rested without presenting any evidence. In the rebuttal portion of closing argument the prosecutor made eight comments to which Crist now objects.[5]

Crist was convicted on all seven counts and was sentenced to concurrent 20-year terms on the counts of attempt murder, armed robbery and armed violence, and five years on each count of aggravated battery. It is uncontested Crist exhausted state remedies as to his objections to the prosecutor's rebuttal.

*Standard of Review and Its Application*

■ *United States v. Carter,* 720 F.2d 941 at 950 (7th Cir.1983) contains our Court of Appeals' most recent exposition of the constitutional standard of review of prosecutorial arguments:

To determine whether the prosecutor's comments were so egregious as to require reversal, we must ask whether the

"statements were so inflammatory and prejudicial to the defendant petitioner as to deprive him of a fair trial and thus deprive him of his liberty without due process of law as proscribed by the Fourteenth Amendment. The standard for the court to apply in making a determination of whether the petitioner was afforded a fair trial is [by] jurisprudential necessity a broad one.... [E]ach case must be decided on its unique facts."

*United States v. Zylstra,* [713 F.2d 1332, 1339–40] (7th Cir.1983); *United States ex rel. Clark v. Fike,* 538 F.2d 750, 760 (7th Cir.1976), *cert. denied,* 429 U.S. 1064, 97 S.Ct. 791, 50 L.Ed.2d 781 (1977). "It is thus necessary to examine the allegedly prejudicial remarks of the prosecutor in the context of the trial as a whole." *United States ex rel. Garcia v. Lane,* 698 F.2d 900, 902 (7th Cir.1983).

Crist contends taken as a whole the presence of the eight improper comments (or combinations of comments) in the prosecutor's rebuttal rendered his trial unfair. Those comments are reproduced and discussed in turn (though the two most serious breaches are discussed first, rather than in the chronological order in which they occurred).

---

**4.** At trial and on appeal Crist maintained the lineup was impermissibly suggestive because Crist was still wearing the clothing described to Russell by the telephone caller.

**5.** All eight comments are quoted verbatim later in this opinion. Crist also adverts to other assertedly prejudicial comments, but this Court does not find they merit discussion. See n. 18.

### 1.

[Prosecutor Kenneth Wadas]: Now, we get their aspect. Where is Michael Lee and where is this other individual? Well, ladies and gentlemen, since Mr. Fox [trial defense counsel[6]] is one of the last few people to talk to Mr. Michael Lee, I would like to ask Mr. Fox where Michael Lee is at because I don't know where he's at. Ladies and gentlemen, this judge sitting on this bench has the authority and power to issue subpoenas to any lawyer that comes in this courtroom, to me and to the defense. If they know where Michael Lee is, they can go get Michael Lee—

[Defense Counsel Lawrence Fox]: Objection, Judge. The state has the burden in this case.

The Court: Sustained.

[Prosecutor]: Since he's one of the last people to talk to Michael Lee I would ask him where Michael Lee is.

[Defense Counsel]: Objection. The state has the burden in this case.

The Court: I will instruct as to the burden.

[Prosecutor]: Ladies and gentlemen, there are witnesses to crimes and there are witnesses to crimes. There are witnesses who come in open court and testify to cases and there are other witnesses in the housing projects of the City of Chicago that, for some reason or another, do not come into court to testify. Why don't they come in to testify? Use your common sense and draw some reasonable inferences, fear, intimidation, two reasons why people don't come into court and testify. I don't know why Michael Lee is not here. The defense could have brought him in if they wanted him here. Why didn't they bring him in?

[Defense Counsel]: Objection, Judge.

The Court: Sustained. (R. 231–32)

In this excerpt the prosecutor discusses the absence of testimony by Lee, an eyewitness to the shooting. Unknown to the jury, Lee's testimony (which would have identified Crist) had been suppressed as being the product of an impermissibly suggestive identification procedure. Yet the prosecutor himself *testified* (there being no evidence to support the statement) defense counsel was one of the last people to talk to Lee, then challenged the defense to produce Lee (an objection to which was sustained), then repeated his charge the defense knew where Lee was (an objection to which the trial judge did not rule on expressly). Finally the prosecutor said many people don't testify because they are afraid or have been intimidated, and he again charged the defense with willfully failing to produce Lee (an objection to which was sustained).

That entire argument flouted and subverted the judge's suppression of Lee's testimony. It implicitly accused defense counsel of procuring Lee's absence, a charge the prosecutor knew to be untrue. It testified regarding facts not in evidence, including recent contacts with Lee and conditions in housing projects. Finally, it deliberately repeated improper and prejudicial argument to which an objection had just been sustained.

### 2.

[Prosecutor]: [I]f all of this is staged, if he's lying on the witness stand, Anthony Russell, then we must be part of that. And, ladies and gentlemen, let me tell you something. I'm a licensed lawyer in the State of Illinois. I took an oath to support the Constitution Mr. Arnold told you about and I would not put my license on the line for this dog in a million years, one million years, a two-bit attempt murdering armed robber, Gilbert Crist. I would put my law license on the line for him?

[Defense Counsel]: Objection, Judge.

[Prosecutor]: Never. Never. I would never be a part of something like that.

[Defense Counsel]: Objection, Judge.

---

**6.** Crist is represented in this Court by Assistant Public Defender Hugh Stevens, who was not

involved in the original criminal trial.

The Court: Overruled.

[Prosecutor]: Defense lawyers can talk about the Constitution, truth, justice and the American way until they are blue in the face. I believe in those same things. (R. 233)

In this second excerpt the prosecutor put the jury to a choice between crediting Russell's testimony and finding the prosecutor himself part of a conspiracy to commit perjury. In support of the former alternative he said he would not jeopardize his license for a "dog" like Crist (an objection to which was overruled).

Of course the third alternative the prosecutor sought to exclude, not by argument but by stratagem, was that Russell was simply mistaken. *United States v. Phillips,* 527 F.2d 1021 (7th Cir.1975) held such a stratagem is improper as vouching and as inconsistent with defendant's right to a fair trial (moreover, as to the ethical aspects of the prosecutor's conduct, see ABA Code of Professional Responsibility ("Code") DR 7–106(C)(4)). And of course it also was highly unprofessional for the prosecutor to call Crist a "dog." [7]

Though the other six comments (taken singly) are not as egregious as the two already discussed, they are important. They are part of "the context of the trial as a whole," and they depict a pervasive rather than an isolated effort by the prosecutor to warp the system by improper argument to the jury—the impartial trier of fact.

3.

[Prosecutor]: You have heard a number of times, maybe 10, 15 times, now, what the burden of proof is, proof beyond a reasonable doubt. That's not proof beyond all possible doubt, that is proof beyond a reasonable doubt, that is a burden that is met every single day in every city, county and state in the entire country. Ladies and gentlemen, the jails and penitentiaries of the United States are filled with people that have been convicted beyond a reasonable doubt. (R. 221–22)

This comment (though surely not a basis for relief on its own) attempted to depreciate the state's burden of proof. Its last portion undercut the concept each individual must be tried and judged on the evidence applicable to him or her alone.

4.

[Prosecutor]: I don't know what the defense means by we need hard evidence. I know what evidence is. I know what the value of testimony of any eyewitness is and a loaded pistol and police officers' testimony and the steps they take involving a case, not creating a crime, solving a crime. (R. 223)

Once again the prosecutor's statement "I know what evidence is" and its context are flagrant vouching. Again such a single instance might be viewed as an excusable lapse—but this is no single instance.

5.

[Prosecutor]: [T]he defense in this case, ladies and gentlemen, is nothing more than a series of smoke screens that are presented before your eyes to try to cloud the real issues in the case. Let's have some fictitious man by the name of George Baker,[8] let's have him, somehow, be the key witness in this case. Let's forget about the eyewitness. Let's have George Baker. Do not let yourselves be fooled or sidetracked by the defense's smoke screens. I'm going to give you some examples of those smoke screens—

[Defense Counsel]: Judge, we're going to object to the term "smoke screens."

The Court: Objection sustained to the use of the word "smoke screens." Proceed.

---

**7.** It appears habit patterns are strong in that particular prosecutor. See *People v. Shepard,* 114 Ill.App.3d 598, 602, 70 Ill.Dec. 348, 350–51, 449 N.E.2d 222, 224–25 (1st Dist.1983), tried by the same prosecutor, in which the language and conduct in this case are disturbingly echoed in a number of respects.

**8.** As an explanatory footnote by this Court, at trial Crist's counsel argued George Baker was the person who called Russell with the information leading to Crist's arrest.

[Prosecutor]: You will see how the defense has twisted words to their advantage. The defense lawyers told you that the defendant has a right not to testify and they are correct. But then they twisted words when he told you by pleading not guilty, in effect, the defendant was testifying and saying he did not commit the crime.

[Defense Counsel]: Objection, Judge.

[Prosecutor]: That was Mr. Fox testifying. That was not the defendant testifying. That was Mr. Fox testifying.

The Court: Overruled.

[Prosecutor]: The defendant did not testify. Mr. Fox testified. That's a word twisting game. (R. 223–24)

In this excerpt the prosecutor accused the defense of setting up "smoke screens" (an objection to which was sustained), trying "to cloud the real issues" and playing "a word twisting game." He commented at length on Crist's failure to testify (an objection to which was overruled).

*Opinion I* held the comment on Crist's failure to testify was proper as invited by defense trial counsel. Crist now objects (June 30 Mem. 14) the first part of the statement "vilified the defense." This is another way of conceding the subject of comment is fair game but contending the manner of commenting was highly unprofessional. Crist's present counsel is right: Such name-calling attacks on the defense strategy were not only unprofessional but also inflammatory and critical of any juror who would subscribe to the defense's theory.

6.

[Prosecutor]: Well, let's get to the second way that the defense will attempt to cloud your reasoning here. Let's try to make the victim's description and identification of the defendant somebody elses [sic] description and identification of the defendant. (R. 227)

This too is a low-class argument, attributing as it does improper conduct to opposing counsel. This Court is not so unrealistic as to impose a sanitizing standard on things said in the heat of argument, and it would not consider this kind of occasional slip as tainting a conviction. Once more, however, "occasional" is not a word befitting this prosecutor's misconduct.

7.

[Prosecutor]: When somebody gets shot in the housing project in the City of Chicago there's a lot of talking, chitchat going on about it, who did what, who knows what, who is staying silent. That's what happens when somebody gets shot. Everybody knows a little bit about what is going on. Information is transmitted back and forth. He had friends in there, his common-law mother-in-law lived in the building and he knows other people in there who he was waiting for and they were trying to find out information for him too.

[Defense Counsel]: Objection, Judge. That isn't based on evidence.

The Court: Overruled. The jury is to only regard competent evidence. This is argument. Go ahead. (R. 229)

In this excerpt the prosecutor himself testified about conditions in the housing project and invited the jury to infer Russell's telephone tip was produced by a network of information transmitted throughout the housing project. That impermissible lawyer-testimony was objected to, but the objection was overruled. Clearly the prosecutor was vouching for Russell's testimony based on either sheer speculation or his own personal knowledge.

8.

[Prosecutor]: In my opening statement I told you all the parties in these cases have different roles. The jury has a certain role. The judge has a certain role. Your role is to determine what the facts are. The judge's role is to determine what the law is. Objection sustained, objection overruled, those are legal decisions. My role is to present evidence and meet the burden of proof. What do you think the defense's role is? The defense's role is to beat this case, have this man cut loose and walk out of

here. Why? So he can laugh at you while he's walking out the door.

[Defense Counsel]: Objection.

The Court: Sustained. The jury is instructed to disregard. Sustained. (R. 233–234)

This eighth and final comment (an objection to which was sustained) was on its face a highly inflammatory vilification of "the defense"—by which reference the prosecutor clearly meant defense *counsel.* Of course such a breach of his ethical duties (see Code EC 7–37) has due process implications only as it impacted on a fair trial for Crist—but the comment plainly had a substantial thrust in that respect as well.

\* \* \*

In sum, comment 1 implicitly accused defense counsel (and obviously Crist himself) of serious misconduct and sought to shift the burden of producing evidence to the defense (both outrageous in light of the prosecutor's knowledge of the trial court's prior suppression ruling); comments 2, 4 and 7 vouched for the credibility of the complaining witness and the strength of the prosecution's case; and comments 3, 5, 6 and 8 attacked the defense by means other than valid and proper argumentation. As required, that congeries of comments will be viewed both for their own effect and in the trial's overall context.

On the "unique facts" of this case this Court indeed concludes the "statements were so inflammatory and prejudicial to defendant petitioner as to deprive him of a fair trial." *Carter,* at 950. As another Court of Appeals said on an earlier occasion, *Hall v. United States,* 419 F.2d 582, 583–84 (5th Cir.1969):

> In considering the impact of what is said the court also must be concerned with the great potential for jury persuasion which arises because the prosecutor's personal status and his role as a spokesman for the government tend to give to what he says the ring of authenticity.

The power and force of the government tend to impart an implicit stamp of believability to what the prosecutor says.

If the jury believed the comments because of "the prosecutor's personal status," Crist was deprived of a fair trial. If the jurors believed defense counsel procured Lee's absence, they could reasonably infer Lee would have corroborated Russell's testimony in full. And the prosecutor's personal evaluations of his own case "amplify the possibility that lay jurors may be misdirected from properly weighing the evidence by the implicit invitation to adopt the evidentiary assessment of the attorney." *United States v. Grooms,* 454 F.2d 1308, 1312 (7th Cir.), *cert. denied,* 409 U.S. 858, 93 S.Ct. 141, 34 L.Ed.2d 103 (1972).[9]

*Carter* (at 950) calls not only for an evaluation of the remarks for their prejudicial effect but also for an examination of those remarks "in the context of the trial as a whole." In view of the nature of the prosecution's case the remarks were not harmless beyond a reasonable doubt (the test under *Chapman v. California,* 386 U.S. 18, 21–24, 87 S.Ct. 824, 826–828, 17 L.Ed.2d 705 (1967)). Evidence that Crist was the assailant comprised only the following:

1. Chicago police detective Ralph Vucko ("Vucko") testified (Crist's State App.Br. 9) that Russell described his assailant at the time of the shooting as "a black man, 27 to 30, 5'2" to 5'5" tall, with a stocky build." Russell corroborated that description, but Vucko's contemporaneous police report did not.

2. Russell and Vucko testified Russell received a call telling him of the location and dress (blue shirt, black pants) of a man fitting the above description.

3. Vucko arrested Crist, the man described in the telephone call. Shortly thereafter, with Crist still wearing the same clothes described to Russell on the

9. For a more extensive discussion of the credibility afforded prosecutors' arguments and the dangers of vouching see *Phillips,* 527 F.2d at 1023–25, and cases cited.

phone, Russell picked Crist out of a line-up.[10]

Considering that evidence alone, jurors could entertain a reasonable doubt about whether Crist was the assailant. Though it is not this Court's role to play advocate for Crist, it would not stretch credulity for jurors to predicate such a reasonable doubt on (for example) one or more of the following kinds of reasoning:

1. Given the lack of corroboration in Vucko's contemporaneous police report, the testimony as to the more precise description could represent the familiar phenomenon of post-hoc reconstruction in the light of later events.[11]

2. Nothing negated the possibility the telephone caller (never identified by the prosecution) was either mistaken or malicious.

3. Russell's identification, though in good faith, could have been erroneous due to the stress of the attack when he first saw his assailant, the limited time period during which he viewed the assailant, and the power of suggestion of the phone call.

In the face of the possibility of a reasonable doubt, the prosecutor characterized the defense as responsible for the presence of only one eyewitness (comment 1). He vouched for his own witnesses and his own case (comments 2, 4 and 7). Finally he attacked the defense as dishonest (comments 3, 5 and 6) and told the jury Crist would laugh at them on the way out the door if it acquitted him (comment 8). This is not a case of harmless error.

True enough the Illinois Appellate Court rejected Crist's objection to the prosecutor's argument, saying in part (108 Ill. App.3d 1208, 68 Ill.Dec. 583, 446 N.E.2d 317, slip op. at 8):

> In view of the strong evidence of guilt no substantial prejudice to defendant resulted.

That evaluation apparently was based on the prosecution's presentation of an eyewitness to the crime. Single-eyewitness cases however, at least in the context presented here, are not so strong that grossly unfair prosecutorial tactics can be excused.[12]

### Deliberate Misconduct/Misleading the Jury

In part because review of prosecutorial argument necessarily has subjective elements, requiring evaluation of each case's unique facts, *United States ex rel. Clark v. Fike*, 538 F.2d 750, 760 (7th Cir.1976), *cert. denied*, 429 U.S. 1064, 97 S.Ct. 791, 50 L.Ed.2d 781 (1977) (citations omitted) sought to provide guidance to the District Courts:

> Cases which dealt with improper argument prejudicial enough to require a new trial, whether through reversal or through granting a habeas corpus petition, show either a wilful or deliberate course of prosecutorial misconduct evidencing a design to improperly prejudice the defendant ... or a serious misstatement of the law or the facts which has the probable effect of misleading the jury....

While *Clark* did not specifically establish either alternative as a prerequisite to relief, both alternatives are in fact present here, surely strengthening if not in fact compelling the case for relief.

---

**10.** *People v. Crist*, 108 Ill.App.3d 1208, 68 Ill.Dec. 583, 446 N.E.2d 317, slip op. at 3 (1982) said "one other individual in the lineup wore a blue shirt and black pants." Crist objects (June 30 Mem. 3 n. 1):

> The lineup photographs, which were included in the record in the appellate court, show that Petitioner was the only participant who was wearing a blue shirt and black pants.

**11.** This does not impugn the integrity of the witnesses at all. All of us know how memory functions: It is often difficult to separate true memory of what occurred at an earlier time from a fleshed-out version that has profited from later occurrences and later discussion (even apart from the often-encountered tendency, though unintentional, to testify to what one believes "must have happened" and not to what did happen).

**12.** That same perception of the case against Crist as a strong one is at the core of the Appellate Court's conclusion (108 Ill.App.3d 1208, 68 Ill.Dec. 583, 446 N.E.2d 317, slip op. at 8) the "possibility of prejudice was corrected."

Three factors support the conclusion the prosecutor engaged in "a wilful and deliberate course of prosecutorial misconduct evidencing a design to improperly prejudice the defendant":

1. Examination of the record reveals the prosecutor made improper comments on nearly every page of the transcript of his closing argument.

2. In comment 1 the prosecutor ignored a sustained objection and repeated the same objectionable comment.

3. *Shepard,* 114 Ill.App.3d at 602, 70 Ill.Dec. at 350–51, 449 N.E.2d at 224–25, described two virtually identical comments by the selfsame prosecutor whose argument is at issue here,[13] as well as the same prosecutor's comment the arresting officer "would have done us all a favor by killing" defendant.[14]

Although wilfulness (like any other manifestation of intent) can seldom if ever be proved conclusively and directly, all these factors provide the strongest evidence the prosecutor's misconduct was not accidental or caused by an emotional reaction to the situation. This Court so concludes.[15]

In addition, comment 1 constitutes "a serious misstatement of ... the facts which has the probable effect of misleading the jury." There is no doubt the prosecutor knew where Lee was in the sense he knew why he was not available to testify. Yet he suggested defense counsel would be able to locate Lee, and he explained Lee's absence as being the result of intimidation even though he knew that explanation did not apply. Because of the already-discussed role of the prosecutor at trial, his explanation had the probable effect of misleading the jury.[16]

### Waiver and Cure

■ In affirming Crist's conviction the Illinois Appellate Court did not similarly address the individual instances of improper comment. It apparently relied on waiver and the curative effect of the trial judge's sustaining objections and giving prophylactic jury instructions.[17] During the complained-of prosecutorial comments defense counsel objected eight times. Objection was sustained four times, overruled three times and the ruling was unclear once. As for the jury instructions, they included I.P.I. Criminal Nos. 1.01, 1.03, 2.03

---

13. Crist's present counsel reports (June 30 Mem. 16) the prosecutor in *Shepard* was the same as Crist's. Lane's counsel has not contested that statement (and the internal evidence of the wholly parallel misconduct and language corroborates it).

14. *Shepard* nevertheless did not reverse the conviction because of the truly overwhelming nature of the evidence, including apprehension of the defendant while fleeing the scene of the crime.

15. This issue was not decided by the Illinois Appellate Court. In any event this Court's determination of the question is not foreclosed by *Sumner v. Mata,* 455 U.S. 591, 102 S.Ct. 1303, 71 L.Ed.2d 480 (1982).

16. Were this the record of a federal criminal trial in this Court (fortunately a non-existent possibility, given the quality of our United States Attorney's office), the case would clearly call for reference to our own lawyer disciplinary system. In light of this Court's duty under Code of Judicial Conduct Canon 3B(3) and Code DR 1–103(A), and given the cumulative impact of the same prosecutor's conduct in *Shepard,* a

copy of this opinion is being sent to the Illinois Supreme Court Attorney Registration and Disciplinary Commission.

17. 108 Ill.App.3d 1208, 68 Ill.Dec. 583, 446 N.E.2d 317, slip op. 7–8 provided eight one- or two-sentence responses to Crist's objections to the prosecutor's rebuttal conduct:

1. Its first response (waiver by failure to object specifically) is considered in the text accompanying this note.

2. Its second response (*comment invited* by defense counsel) apparently does not apply to any comments discussed here except (as indicated) comment 5. Lane does not argue "invited comment" before this Court.

3. Its third response (that some comments invite valid inferences) has been discussed in this opinion—to the extent the response may apply—under *Standard of Review and Its Application.*

4 and 5. Its fourth and fifth responses (that objections were cured) are also treated in the text accompanying this note.

6, 7 and 8. Its remaining responses (suggesting particular errors are harmless) has also been dealt with under *Standard of Review and Its Application.*

and 2.04, which in part instructed the jury to disregard arguments of counsel not based on evidence.

Waiver is certainly not a bar to Crist's enforcement of his rights here:

1. It is clear from the record of the prosecutor's rebuttal Crist's counsel vigorously pursued his rights. It would be unreasonable to require more than the eight objections defense counsel lodged to a single closing argument rebuttal.[18]

2. Comments 3, 4 and 6, though no objection was interposed, may still be considered in evaluating the nature and tone of the whole rebuttal. Such an evaluation is necessary to determine whether Crist was deprived of a fair trial.

3. On habeas corpus review federal courts honor state law as to procedural defaults such as waiver, *Engle v. Isaac,* 456 U.S. 107, 129, 102 S.Ct. 1558, 1572, 71 L.Ed.2d 783 (1982). That proposition does not aid Lane here, for Illinois courts "will consider prejudicial arguments made without objection of counsel if as a result thereof the parties litigant cannot receive a fair trial," *People v. Dailey,* 51 Ill.2d 239, 243, 282 N.E.2d 129, 131 (1972).

So much then for waiver considerations.

■ As for the possible curative effects of sustaining the objections and instructing the jury, Lane does not advance that argument here. Nonetheless, because the Appellate Court invoked those effects it is appropriate to consider them here:

1. Of the five objected-to comments, the objections were overruled as to comments 2 and 7. Thus the court not only failed to cure the effect of these improper comments, it reinforced their effect by ruling them proper.

2. As to comments 1, 5 and 8, to which objections were sustained, the court did not cure the effect of the entire improper comment simply by saying "sustained." Only once did it instruct the jury to disregard the comment (after an objection to comment 8), and that instance was so inflammatory—coming as it did on the heels of all the others—there is serious doubt jurors could truly have put it out of their minds despite good faith efforts to do so.

3. In the total context of this case, the general jury instructions came too late and were insufficiently focused on the specific problems. As already discussed, one principal vice of improper prosecutorial arguments is that jurors believe prosecutors because of their position. Thus the court's belated and simple admonition (for example) to disregard arguments not based on the evidence (I.P.I. Criminal No. 1.03) will not suffice to cure improper and inflammatory remarks.[19]

4. One fundamental premise of the Appellate Court's analysis, that in view of the strength of the evidence no harm resulted, has already been rejected.

Finally, as this opinion has said in a number of different ways, it is not the judge's responsibility alone to make a greater effort to correct the argument's ill effects. *Phillips,* 527 F.2d at 1024 teaches the prosecutor too has a duty to preserve the right to fair trial. In this case the "egregious misconduct" benchmark of *Donnelly* has been met and surpassed.

### Conclusion

Crist's motions for leave to file his amended petition and for reconsideration are granted. There is no genuine issue of material fact, and Crist is entitled to a

---

**18.** Every litigator is aware of the potential backlash of repeated objections. There can be no excuse for framing an argument in a way calculated to force a flow of objections from opposing counsel. It may parenthetically be noted defense counsel raised two other objections in a portion of the rebuttal objected to by Crist on habeas review but not discussed here.

**19.** Of course nearly all (if not all) criminal trials, including the trials in the various cases cited in this opinion overturning convictions on grounds of prosecutorial misconduct in closing argument, contain an instruction similar or identical to I.P.I. Criminal No. 1.03.

judgment (granting and issuing the writ) as a matter of law.

In accordance with the usual practice in these cases (see, e.g., *United States ex rel. Williams v. Brown,* 721 F.2d 1115 at 1120 (7th Cir.1983)), execution of the writ should be stayed to permit Crist's prompt retrial. Accordingly Lane is ordered to discharge Crist unless the State of Illinois grants him a new trial "within a reasonable time not to exceed ninety days, and diligently and without delay prosecute[s] the charges to final conclusion" (*id.*).