**UNITED STATES of America ex rel. Ellis DAMPIER, Plaintiff,**

v.

**Michael O'LEARY, Warden, and Neil F. Hartigan, Attorney General of Illinois, Defendants.**

No. 84 C 2073.

United States District Court, N.D. Illinois, E.D.

Oct. 5, 1984.

Ellis Dampier, pro se.

James E. Fitzgerald, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge.

Ellis Dampier ("Dampier") was convicted of murder and is serving a term of life imprisonment following a jury trial in Illinois state court. He has petitioned this Court *pro se* under 28 U.S.C. § 2254 for a writ of habeas corpus. Dampier alleges three constitutional violations: (1) that his warrantless arrest in his home violated the Fourth Amendment; (2) that he received ineffective assistance of counsel at his trial; and (3) that he was prejudiced by prosecutorial misconduct at trial. Defendants ("the State") have filed a motion to dismiss or for summary judgment, and Dampier has filed a cross-motion for summary judgment. For the reasons stated below, the Court grants the State's motion and denies Dampier's petition for a writ. The relevant facts in the context of each of the issues Dampier raises are developed below.

*The Fourth Amendment Claim*

Dampier argues first that his warrantless arrest at his home violated the

Fourth Amendment, as interpreted in *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). To the extent that Dampier bases his petition solely on the argument that his arrest was illegal, we deny him habeas relief, whether or not his arrest was in fact illegal. An illegal arrest by itself does not warrant relief under 28 U.S.C. § 2254 from an otherwise valid conviction. *See U.S. ex rel. Canity v. Lane*, 569 F.Supp. 808, 812 (N.D.Ill.1983); *see also Crowell v. Zahradnick*, 571 F.2d 1257, 1259 n. 3 (4th Cir.1977), *cert. denied* 439 U.S. 956, 99 S.Ct. 357, 58 L.Ed.2d 348 (1978); *Shuman v. Wolff*, 543 F.Supp. 104, 110 (D.Nev.1982); *Burtis v. Dalsheim*, 536 F.Supp. 805, 806–07 (S.D.N.Y.1982). A federal court may consider the legality of an arrest if the habeas petitioner also challenges the introduction at his trial of evidence which was the fruit of the allegedly illegal arrest. *See, e.g., Canity*, 569 F.Supp. at 812. Dampier's petition does not challenge the introduction of any fruits of his arrest, and normally that omission would end our analysis of this issue. However, since Dampier is proceeding *pro se* and his former counsel did move in state court to suppress a confession which was a fruit of the arrest, we will assume that Dampier's petition for habeas relief also rests on the ground that the illegal arrest produced tainted evidence.

■ But even acting under that assumption, we must deny Dampier's writ. Under *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), we cannot grant habeas relief for Dampier's Fourth Amendment claim if the State afforded him a full and fair opportunity to litigate that claim. Dampier had a full and fair chance to raise his arguments in state court. He admits that the trial court conducted a full evidentiary suppression hearing, consider-

ing his own testimony as well as that of police officers; the court made several factual findings and applied relevant law to those facts. Dampier appealed to the Illinois Appellate Court, which affirmed after fully considering his arguments.[1] Because Dampier enjoyed this full and fair opportunity to ventilate his Fourth Amendment arguments, *Stone* bars our collateral review of the merits, even if we would want to reach a different result. *See U.S. ex rel. Maxey v. Morris*, 591 F.2d 386, 389 (7th Cir.1979), *cert. denied*, 442 U.S. 912, 99 S.Ct. 2828, 61 L.Ed.2d 278 (1979). Accordingly, we deny Dampier's writ with respect to the Fourth Amendment issue.

### The Ineffective Assistance of Counsel Claim

■ Dampier contends that his defense counsel gave him ineffective assistance within the meaning of the Sixth Amendment. The Supreme Court recently defined the standard of review of such claims. *Strickland v. Washington*, —— U.S. ——, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 2064. We apply a two-part test to see whether we can "rely on" the trial result. First, we judge whether Dampier has shown that counsel's performance was "deficient." *Id.* An objective, "reasonableness" standard applies. Dampier must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 2066. Second, Dampier "must show that the deficient performance prejudiced the defense." *Id.* at 2064.

---

1. Because the Illinois courts considered his arguments and applied relevant law, we disagree with Dampier that *Gamble v. Oklahoma*, 583 F.2d 1161 (10th Cir.1978), pertains to this case. The court there affirmed the granting of habeas relief because the state courts had ignored Supreme Court case law directly on point. It concluded that the state courts had thereby denied Gamble a "fair" opportunity to litigate his

Fourth Amendment defense. Dampier has not shown us that the State "flagrantly disregarded" controlling federal constitutional law, as was done in *Gamble*. *U.S. ex rel. Maxey v. Morris*, 591 F.2d 386, 390 (7th Cir.1979), *cert. denied*, 442 U.S. 912, 99 S.Ct. 2828, 61 L.Ed.2d 278 (1979). To the contrary, the Appellate Court considered and plausibly distinguished the cases that Dampier had cited.

To prove prejudice, Dampier must persuade the Court that "there is a reasonable probability that, but for counsel's unprofessional errors, the [trial] result would have been different." *Id.* at 2068; *see also United States v. Payne,* 741 F.2d 887 at 890–891 (7th Cir.1984) (*per curiam* ). After carefully considering Dampier's claim in light of the above standards, we conclude that he has not met his burden of establishing that he received ineffective assistance within the meaning of *Strickland.*

Dampier charges his former counsel with five deficiencies, which, he claims, add up to "deficient" representation. We will consider each in turn.

■ a. *Motion to Suppress.* Dampier points us to his counsel's original motion to suppress on the Fourth Amendment issue, which the trial court refused to consider because it was so poorly drafted. "This is the first time I've ever seen a motion like this," the trial judge said. However, because the trial court allowed counsel to amend the motion to quash and eventually conducted a hearing, we believe that Dampier was not prejudiced by the original inartfully drafted motion. Dampier alleges no deficiency in the amended motion or in counsel's conduct at the suppression hearing. Moreover, different counsel raised the same Fourth Amendment issue on appeal. In sum, Dampier has not met the second or "prejudice" part of the *Strickland* test.

■ b. *Tardy Counsel.* Dampier argues that his lawyer was incompetent because he arrived late for the *voir dire* of the jury, which prompted the trial judge to reprimand counsel before the jury venire [2]

and ultimately to hold counsel in contempt. We do not believe that the contempt holding prejudiced Dampier, since it was made outside of the jury's presence. While counsel's isolated tardiness was improper, it did not amount to "unreasonable professional assistance" under *Strickland.* Nor can we say that "but for" counsel's tardiness, and the judge's resulting and understandable irritation, the trial would have produced a different result. The lateness occurred only at the beginning of jury selection and the evidence itself eventually pointed overwhelmingly to guilt. Moreover, the state trial judge specifically admonished the jury not to consider counsel's lateness in evaluating the evidence.

■ c. *Motion in limine.* Dampier asserts that his counsel should have filed a motion *in limine* to bar Anita and Eugene Shanklin, eyewitnesses, from testifying at trial. We agree with the State that Dampier gives no legal reason for excluding their testimony. He perhaps is arguing that they should have been barred because they used drugs heavily, but counsel established their drug use on cross-examination for the jury to consider in assessing their credibility. We cannot call counsel's conduct unreasonable, and neither can we find that Dampier was prejudiced. Thus, this claim fails to meet both parts of the *Strickland* test.

■ d. *Failure to call expert.* In a related argument, Dampier states that his lawyer should have called an expert to testify about the effects of drugs on Anita Shanklin when she witnessed the murder. In evaluating this alleged omission, our "scrutiny of counsel's performance must be highly deferential." *Strickland,* 104 S.Ct.

---

2. State trial judge Eugene Pincham made several comments about counsel's tardiness, including the following:

 THE COURT: ... I am irritated about it. And my judgment tells me that when I am irritated to keep my mouth shut. That is what I am going to do now until such time as he arrives.

 I will take it up with him probably out of your presence about him being late. ... But I will assure you appropriate action will be taken. (R. 85–86)

\* \* \* \* \* \*

 Likewise, the attorneys in this case have other cases and sometimes they may be late. It is my judgment that they won't be late again after today, but if they are, you that that is not to be a factor that concerns you at all. You are not to in any way concern yourself with it. You are not to hold it against or for either side. (R. 121)

at 2065. We must "eliminate the distorting effects of hindsight ... reconstruct the circumstances of counsel's challenged conduct, and ... evaluate the conduct from counsel's perspective at the time." *Id.* Given this standard, we cannot say that counsel's failure to call an expert was constitutionally deficient; indeed, even from hindsight his choice does not seem unwise. He established on cross-examination and argued in closing that Anita Shanklin used drugs regularly and was under their influence when she witnessed the material events. The jury was fully able to weigh her credibility. Trial counsel could reasonably conclude that an expert's testimony in this context would add little, if any, help to Dampier's defense. In sum, Dampier has not overcome the "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." 104 S.Ct. at 2066.

 e. *Failure to object.* Finally, Dampier alleges that counsel was deficient for not objecting to alleged prejudicial remarks made by the prosecutor during closing. The record shows that counsel did object to the prosecutor's "Gacy" remark (discussed in the next section), and so that part of Dampier's argument is without merit. As for other prosecutorial remarks, we will assume, for argument, that counsel should have objected. Nevertheless, we hold that counsel's failure does not create a "reasonable probability that, but for [the error], the result of the proceeding would have been different." *Strickland,* 104 S.Ct. at 2068. Counsel's failure to object could have prejudiced Dampier only if the grounds for the objection had merit. As our discussion in the next section shows, the prosecutor's closing comments did not deprive Dampier of a fair trial, so counsel's failure to object was unprejudicial.

Accordingly, we deny the writ with respect to Dampier's Sixth Amendment arguments.

### The Prosecutorial Misconduct Claim

Dampier points to three statements made by the prosecutor in closing argument which he believes denied him a fair trial. The Seventh Circuit has made clear that the Court must proceed on a case-by-case basis in deciding whether a prosecutor's conduct deprived an accused of a fair trial:

> In *United States v. Carter,* 720 F.2d 941 (7th Cir.1983), our court recently reiterated the proper standard to be applied when determining whether a prosecutor's comments deprived an accused of a fair trial. There we recognized that:
>
> > "To determine whether the prosecutor's comments were so egregious as to require reversal, we must ask whether the
> >
> > 'statements were so inflammatory and prejudicial to the defendant petitioner as to deprive him of a fair trial and thus deprive him of his liberty without due process of law as proscribed by the Fourteenth Amendment. The standard for the court to apply in making a determination of whether the petitioner was afforded a fair trial is [by] jurisprudential necessity a broad one.... [E]ach case must be decided on its unique facts.'
> >
> > *United States v. Zylstra,* 713 F.2d 1332 at 1339 (7th Cir.1983); *United States ex rel. Clark v. Fike,* 538 F.2d 750, 760 (7th Cir.1976), *cert. denied,* 429 U.S. 1064, 97 S.Ct. 791, 50 L.Ed.2d 781 (1977). 'It is thus necessary to examine the allegedly prejudicial remarks of the prosecutor in the context of the trial as a whole.' *United States ex rel Garcia v. Lane,* 698 F.2d 900, 902 (7th Cir.1983)."
>
> *Id.* at 950.

*Jentges v. Milwaukee County Circuit Court,* 733 F.2d 1238, 1242 (1984). With this approach in mind, we move to Dampier's claims.

 a. *The Gacy remark.* Dampier argues that the prosecutor's reference to the Gacy and Atlanta mass murders prejudiced him in the eyes of the jury. The relevant colloquy went as follows:

[Prosecutor]: —there was no reason to frame anyone. The kind of cases that

have to be solved are the Atlanta murder, the Gacy killings, not this case—

[Defense counsel]: Oh, objection.

[The Court]: He may argue.

By mentioning these two notorious mass murders, the prosecutor no doubt entered dangerous terrain and would be well advised to avoid such references in the future. Certainly, if the prosecutor had directly or indirectly likened Dampier to Gacy, he would have committed misconduct. *See People v. Barnes*, 107 Ill.App.3d 262, 437 N.E.2d 848 (1982). However, taken in the context of the prosecutor's argument, and the case as a whole, this reference was not so inflammatory and prejudicial as to deprive Dampier of a fair trial. As the State points out, the prosecutor was responding to a defense theory that the police were framing Dampier because he was a drug dealer. The prosecutor argued in reply that the police had no pressure or incentive to frame a defendant, as they might in a high-publicity case like a mass murder. The prosecutor, then, was saying that this case *differed* from a Gacy-type case. Because the prosecutor was not directly or indirectly likening Dampier to Gacy, and in fact was distinguishing the two cases with regard to how the police would approach the case,[3] we do not believe that the statement inflamed the jury and deprived Dampier of a fair trial.

 b. *The "puff of smoke" remark.* Dampier's next complaint concerns the prosecutor's reference to the defense's "frame" theory as "a puff of smoke to confuse you, to detract your attention from the real evidence in this case." In general, a prosecutor may certainly comment on a defense theory. A state prosecutor, like a U.S. Attorney, " 'may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones.' *Berger v. United States*, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). Of course, one of the 'hard blows' that an attorney, including a government attorney, may strike is comment upon his opponent's arguments. [Citation omitted]." *United States v. West*, 670 F.2d 675, 688 (7th Cir. 1982), *cert. denied*, 457 U.S. 1124 (1982). In general, "characterization of a defense as fabricated, standing alone, is no more improper than characterizing a witness as a liar." *United States v. Craig*, 573 F.2d 455, 494 (7th Cir.1977), *cert. denied*, 439 U.S. 820, 99 S.Ct. 82, 58 L.Ed.2d 110 (1978). We hold that the few characterizations of the defense as a "puff of smoke," standing alone, fell within the bounds of fair play and did not deny Dampier a fair trial.[4]

▆ Finally, Dampier argues that the prosecutor improperly "vouched" for the credibility of the State's witnesses. However, we do not believe he did so. In the context of conflicting testimony, the prosecutor was free to argue that the State's witnesses were more believable than the defendant.

### Conclusion

For the foregoing reasons, Dampier's petition for a writ of habeas corpus is denied and summary judgment is granted for the state. It is so ordered.

---

3. In that regard, this case differs from *People v. Barnes, supra,* where the court held that a prosecutor's reference to Gacy in closing prejudiced the defendant. In that case, the prosecutor's remark indirectly linked the defendant's character to Gacy's. In the present case, the prosecutor did not even remotely compare Dampier to Gacy.

4. This case is unlike *U.S. ex rel. Crist v. Lane,* 577 F.Supp. 504, 508–09 (N.D.Ill.1983) (Shadur, J.), where the prosecutor repeatedly called the defense a "smoke screen," mounted an extended campaign to "villify the defense," *id.,* and committed several other acts of misconduct. In the present case, the prosecutor's isolated puff of smoke comments do not rise to the egregious and unethical campaign of the *Crist* prosecutor. *See also Craig,* 573 F.2d at 494 (if terms like "fabrication" are used excessively, defendant is denied a fair trial).