UNITED STATES of America ex rel. Clarence KIRK, Petitioner,

v.

John J. PETRELLI, Warden, Illinois State Penitentiary,

and

Theodore Fields, Chairman, State of Illinois Pardon and Parole Board, Respondents.

No. 71 C 1329.

United States District Court, N. D. Illinois, E. D.

Sept. 30, 1971.

793

Michael F. Borun, Chicago, Ill., for petitioner.

William J. Scott, Atty. Gen. of Ill., Warren K. Smoot, Asst. Atty. Gen., Chicago, Ill., for respondents.

## MEMORANDUM OPINION

WILL, District Judge.

Petitioner is seeking habeas corpus relief under Section 2254 of Title 28 of the United States Code. He is presently on parole from the Illinois State Penitentiary at Pontiac, Illinois, where he had been serving a fifteen-to-thirty year sentence imposed on December 13, 1962, by the Circuit Court of Cook County, Chicago, after he was found guilty by a jury of the offense of murder. The conviction was affirmed by the Supreme Court of Illinois on December 1, 1966, where the same arguments advanced by the petitioner in this action were rejected. People v. Kirk, 36 Ill.2d 292, 222 N.E.2d 498 (1966). The petitioner next sought relief under the Illinois Post Conviction Act where the action was dismissed even though the petitioner sought to withdraw the petition on the ground that the decision of the Supreme Court made the issues res judicata in the state courts. An appeal from this dismissal is now pending in the Illinois Supreme Court.

Petitioner claims that certain statements made in the closing argument of the prosecutor to the jury were so inflammatory and prejudicial as to deprive him of a fair trial as guaranteed by the

Fourteenth Amendment. We reach the merits of his claim and deny his petition.

At the outset, a question of great significance to the viability of the federal system must be dealt with. Are there any circumstances under which a state prosecutor's closing argument, albeit highly prejudicial and inflammatory, can deprive a defendant in a state case of fundamental rights guaranteed by the federal Constitution? A negative response would answer the question for all prospective petitioners regardless of the unfairness that might stem from a highly improper and prejudicial closing statement. On the other hand, an affirmative response might require a federal court to sit as a reviewing court of all trial errors which are generally considered to be strictly "state" questions, asking itself that most nebulous of questions—did this error, if error it be, deprive the petitioner of a fair trial?

Either categorical answer seems unacceptable. There *may* be a situation where the closing statement of the prosecutor is so prejudicial that it does indeed deprive the defendant of a fair trial. Is such a defendant to be left without a federal remedy? Does our system of federalism require that the federal government be strictly limited in its power to overturn decisions, even though outrageous, made in areas that have been left to the states by the Constitution? Reviewing errors to see whether or not the trial was "fundamentally fair," it can be urged, breaks down the distinction between state and federal courts.

Unaided as we are by a specific ruling either by the Supreme Court or by this Circuit, conflicting decisions of other circuits and districts must be examined to see if they provide any compelling logic. The two Circuit decisions that can be found ruling specifically on whether statements by a prosecutor to the jury involve a federal constitutional question are conflicting. In Setser v. Welch, 159 F.2d 703 (4th Cir. per curiam 1947), cert. denied 331 U.S. 840, 67 S.Ct. 1510, 91 L.Ed. 1851, it was held that the allegedly prejudicial language used by a prosecutor (there a United States Attorney) in an address to the jury is not a question that can be raised by habeas corpus. In Jackson v. California, 336 F.2d 521 (9th Cir. 1964), on the other hand, the court made a determination of whether the allegedly improper remarks of a state prosecutor did deprive the petitioner of a fair trial after acknowledging the concept that federal courts should not sit as reviewing courts of their state counterparts. In United States ex rel. Chase v. Rundle, 266 F.Supp. 487 (M.D.Pa.1967), the court stated that "absent substantial prejudice the remarks of a prosecuting attorney in his opening statement cannot be raised by habeas corpus," and then went on to determine whether there had been "substantial prejudice."

■ As with most difficult legal questions, the easiest way is to follow the traditional path of a general rule with exceptions. The general rule is that federal habeas corpus is not a proper proceeding in which to attack errors that are made at a state trial. Frank v. Mangum, 237 U.S. 309, 35 S.Ct. 582, 59 L.Ed. 969 (1915). However, if these errors are so grievous as to constitute a denial of fundamental constitutional rights, then habeas corpus may be appropriate. Sampsell v. California, 191 F.2d 721 (9th Cir. 1951), cert. denied, 342 U.S. 929, 72 S.Ct. 369, 96 L.Ed. 692 (1952); Jackson v. California, *supra;* United States ex rel. Chase v. Rundle, *supra.*

■ Accordingly, we accept the procedure employed by the Ninth Circuit, and examine the alleged errors to ascertain whether or not they made the proceeding so devoid of fairness that it deprived the petitioner of due process of law. In making such an analysis, alleged errors in the trial that do not relate to some specific Constitutional right in the first eight Amendments which has been "incorporated" into the Fourteenth Amendment must be so outra-

geous and so prejudicial as clearly to constitute a denial of due process.

In the instant petition, five statements made by the State's Attorney in his closing argument to the jury are singled out as being inflammatory and prejudicial:

1. "What you have heard is an insult to your intelligence, and I think you realize that. I am ashamed to see twelve jurors in this box have .to walk by, this witness stand where so much filth, so many lies, obvious lies, have been spoken. I am ashamed to see that men that I have looked up to, professional men who I thought and I feel are someone I should respect for the fact that they are professional men, have taken the stand and, I don't think they were mistaken, I think they tried to hoodwink this jury." R–1926

2. "I'm ashamed to see these two young defense attorneys taking the doctrine that Adolph Hitler, a long time ago, told the people of Germany. He said if you told enough lies and enough people told lies, you'd get to believe these lies." R–1927

3. "You heard many things that were said, many of the questions that were asked of Maggie McMillan, who is sitting in this courtroom today. You heard about this Windy City, you heard about these threats, you heard a lot of filth and trash. Did they back up those statements as they said they were going to do? Did you hear anyone testify to these dirty statements, dirty that they brought out, that she was a gambler, that she was doing this and that? No. No you didn't hear a word of that. You also heard how their star standup witness, Isiaah Terrell, is such a wonderful man, this man who they have the audacity to call an officer. That perjurer wouldn't be qualified to sweep the floors of this Courtroom. And how he became a Hawk man, I have no idea, but I will go into that a little more." R–1928

4. "I also want to apologize to the ladies and gentlemen of the jury for both Mr. Siet and myself, who forgot to ask them, as did Mr. Siet, 'Did you get paid for your testimony?'" R–1928

5. "The citizens of Chicago scream, we want justice. They scream, don't let these defendants go. They ask for law and order. Fortunately you ladies and gentlemen of the jury have a chance that many citizens don't have. You have a chance to show a community on the south side of Chicago that citizens who sit as jurors, don't tolerate senseless killing. Ladies and gentlemen, this is a responsibility which is in your hands. All I can do is ask, in the name of the People of the State of Illinois, that you return a verdict of guilty to Murder as to one Clarence Kirk." R–1946–1947

We note first that neither the trial court nor the Supreme Court of Illinois, Justice Schaefer dissenting, felt that these statements were so improper as to require a new trial let alone that they were so improper as to deprive the defendant of his constitutional rights. The state courts specifically held that these statements were harmless error. This determination in the state courts has probative value in this federal habeas corpus proceeding but, of course, is not controlling. We must make an independent determination of whether these statements constituted a deprivation of the petitioner's constitutional rights.

The question to be decided is whether the above quoted statements were so inflammatory and prejudicial to the defendant petitioner as to deprive him of a fair trial and thus deprive him of his liberty without due process of law as proscribed by the Fourteenth Amend-

ment. The standard for the Court to apply in making a determination of whether the petitioner was afforded a fair trial is jurisprudential necessity a broad one. As with many issues of Fourteenth Amendment due process, each case must be decided on its unique facts. Prior cases unless on all fours factually with the instant case are of little assistance.

Having examined the record of this case in its entirety, we conclude that these closing remarks by the State's Attorney to the jury did not deprive the petitioner of his constitutional rights.

The first four remarks came at the beginning of the prosecutor's statement to the jury. The first two remarks were objected to by the defense. With each objection, the court instructed the jury as to the significance of closing argument. The judge said that it was not evidence and the jury could agree or disagree with the prosecutor's inferences about the evidence as it saw fit. He did not formally pass upon these objections but allowed the prosecutor to continue after admonishing the jury.

■ The first remark speaks to the evidence presented by the defense and the credibility of defense witnesses. Although the language by the prosecutor was strong, it can hardly be said that strong language in an argument to a jury deprives a defendant of his constitutional rights. It is quite proper to attack the adequacy of the defense and especially the crediblity of defense witnesses.

■ The second remark is again in what appears from the entire record to be the characteristically strong and bombastic language of the prosecutor. Insofar as his remarks made reference to the credibility of the defense witnesses it was proper. His reference to the integrity of the defense attorneys is unfortu-nate and clearly improper, but it does not deprive the defendant of federal constitutional rights.

■ The third and fourth statements ran together and there was but one objection which came at the end of the fourth remark. This objection was sustained by the court, presumably on the basis that the inference that the defense witnesses were paid for their testimony was improper which it clearly was. The Illinois Supreme Court held this to be harmless error, with Justice Schaefer dissenting and arguing that this error required a new trial. In light of the entire record, we find that this remark, while inexcusable and reprehensible, did not deprive the petitioner of his constitutional rights.

The third remark, regardless of whether it had been objected to, which is unclear, was again a strongly worded comment on credibility and was proper.

■ The fifth remark came at the very close of the prosecutor's statement to the jury. It was not objected to by the defense. The Second Circuit has recently held that improper remarks must be objected to at the time they are made in order to collaterally attack them in a habeas corpus proceeding. United States ex rel. Satz v. Mancusi, 414 F.2d 90 (2d Cir. 1969). We agree with the logic of this case and hold, furthermore, that even if this remark had been objected to by the defense, it would not constitute a deprivation of constitutional rights. The alleged racial slur is at best ambiguous and is not so prejudicial as to deprive the petitioner of a constitutionally fair trial.

■ The aggregate effect of these statements did not involve the deprivation of constitutional rights. An appropriate order will enter denying this petition.