UNITED STATES of America ex rel. Efrain GARCIA, Petitioner-Appellee,

v.

Michael LANE, Respondent-Appellant.

No. 82–1962.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 1, 1982.

Decided Feb. 1, 1983.

Jack Donatelli, Chicago, Ill., for respondent-appellant.

Donald V. Young, Chicago, Ill., for petitioner-appellee.

Before BAUER and COFFEY, Circuit Judges, and BONSAL,* Senior District Judge.

* Senior District Judge Dudley B. Bonsal of the Southern District of New York is sitting by designation.

BONSAL, Senior District Judge.

Petitioner, Efrain Garcia, was charged in November, 1974 with murdering Donald Taylor, and in August, 1977, following a jury trial in Cook County Circuit Court, was convicted of murder and sentenced to 30 to 90 years' imprisonment. Petitioner appealed his conviction to the Illinois Appellate Court, which affirmed. *People v. Garcia,* 65 Ill.App.3d 472, 22 Ill.Dec. 51, 382 N.E.2d 371 (1st Dist.1978). Petitioner filed a petition for a writ of habeas corpus in the United States District Court for the Northern District of Illinois in August, 1979. The district court (Getzendanner, J.), by order filed July 2, 1982, granted petitioner's writ on the ground that prejudicial remarks made by the prosecutor in his closing argument at the trial denied petitioner a fair trial. The state appeals.

Petitioner and an alleged eye witness, Genaro, were the principal witnesses at the trial. Genaro had given the police a statement shortly after the murder in which he denied having any knowledge of the crime. At trial, he testified that he saw petitioner shoot Taylor, explaining his prior inconsistent statement on the basis of fear, viz., that he knew that petitioner and his brother were members of the Latin Kings and he feared gang retaliation if he cooperated with the police. The trial court admitted this testimony because it was relevant to Genaro's credibility and it explained his prior inconsistent statement.

The district court held that the prosecutor's remarks went beyond an attempt to explain Genaro's prior inconsistent statement. In its memorandum opinion, the district court stated that, "In closing argument, the prosecutors repeatedly argued Garcia's gang membership to inflame the jury and in connection with issues other than Genaro's credibility." According to the district court, the prosecutor's statements were designed to improperly preju-

dice the petitioner and mislead the jury, in violation of petitioner's Fourteenth Amendment right to a fair trial. We disagree with the district court's holding that the prosecutor's remarks in his closing argument were so egregious as to deny petitioner a fair trial, and accordingly reverse.

■ In determining whether statements by a prosecutor rise to the level of a constitutional infraction, we apply the standard endorsed by us in *United States ex rel. Clark v. Fike,* 538 F.2d 750, 760 (7th Cir. 1976) (quoting *United States ex rel. Kirk v. Petrelli,* 331 F.Supp. 792, 795–96 (N.D.Ill. 1971)): "The question to be decided is whether the ... statements were so inflammatory and prejudicial to the defendant petitioner as to deprive him of a fair trial and thus deprive him of his liberty without due process of law as proscribed by the Fourteenth Amendment." This standard is a broad one which requires that "each case ... be decided on its unique facts." *Id.* It is thus necessary to examine the allegedly prejudicial remarks of the prosecutor in the context of the trial as a whole.

Genaro testified that he felt there were bad feelings between the petitioner and Taylor stemming from the fact that the petitioner had dated Taylor's wife, Michelle, before her marriage to Taylor; that about a week before Taylor was murdered, he had heard the petitioner express his love for Michelle and his desire to marry her; that on the night of the murder he and the petitioner overheard Taylor in Genaro's parents' home proclaiming his love for Michelle, whereupon the petitioner threatened to "get" Taylor; that when Taylor left the house, the petitioner followed with Genaro; that when they caught up with him, Taylor took off his shirt and jacket, calling out that he was not afraid of the petitioner; and that the petitioner took a handgun out of his waistband and fired a shot at Taylor's head from 6–12 inches behind it.

The petitioner's testimony presented a different version of the events that night. He testified that he did not overhear Taylor speaking in the house; that his brother Miguel arrived at the house and, at 11:30, went downstairs with him to Miguel's apartment; that he had not expressed a desire to marry Michelle; that he never threatened to "get" Taylor; and that he did not shoot him. Miguel did not testify at the trial.

■ Genaro's testimony that he knew the petitioner and Miguel to be members of the Latin Kings was properly admitted to explain the prior inconsistent statement made by him to the police and brought out at trial by the petitioner's attorney. As a result, the prosecutor was free to comment in closing argument on the petitioner's membership in the gang, as a means of establishing Genaro's credibility. *See United States v. Spain,* 536 F.2d 170, 174 (7th Cir.1976). The parts of the prosecutor's closing argument which the district court held to have violated petitioner's constitutional rights include some which clearly address the issue of Genaro's credibility. For example:

> The whole issue in this case is who you want to believe. It's one against one. It's this man, the Latin King, [indicating] versus Anthony Genaro.

Other parts use the credibility issue as a springboard for more general comments about the Latin Kings:

> I ask you to find [Garcia] guilty, and, in so doing, to tell the rest of the Latin Kings and the other gangs in Chicago that they will not be allowed to commit murder and then have their brothers speak to witnesses and thereby get away with murder.

> Anthony Genaro left the city and he left his family because he didn't want to get involved, because he's afraid of the gang. And that worked for him at the preliminary hearing. If it works today because of his conduct and the conduct of other Latin Kings, you will validate the hunting license of every gang member on the South Side, West Side, every side of our city. They will know they can get away, do their crimes and get away with it, because their friends, their relatives are going to intimidate witnesses.

If you believe him, let him go. [Indicating] You put him back on the street and you put him back with the Kings and you put the gun back in his hand.

While we do not agree with the state's contention that the prosecutor merely intended through such statements to focus the jury's attention on the credibility issue, none of the statements cited by the district court support a holding that the petitioner's right to a fair trial was violated.

As we noted in *Bergenthal v. Cady,* 466 F.2d 635, 637 (7th Cir.1972), "Conduct of state prosecutors asserted by federal habeas corpus petitioners to be unfair and prejudicial has consistently been held to fall short of constituting a denial of due process." Here, a review of the record does not disclose the "wilful and deliberate course of prosecutorial misconduct evidencing a design to improperly prejudice the defendant" which *Clark* requires. 538 F.2d at 760. The thrust of the prosecutor's closing argument was that Genaro was a more credible witness than the petitioner. For example, at the beginning of his argument, the prosecutor stressed that "the only issue is the credibility of witnesses," and told the jury that it was their job to decide who to believe. And in concluding, he stated, "Ladies and gentlemen, if you believe Anthony Genaro, based upon credibility, you have to find [the defendant] guilty. And that is what I'm asking you to do."

Comparison of the comments challenged here to those underlying other claims of prosecutorial misconduct, though not dispositive, is nevertheless of some probative value. Decisions finding a constitutional violation that justifies the granting of a new trial have involved misconduct of a far more egregious nature. *E.g., United States v. Phillips,* 527 F.2d 1021, 1022 (7th Cir. 1975) (prosecutor implied that finding defendant innocent would require also finding prosecutor guilty of conspiring to violate defendant's civil rights). In other cases, misconduct more disturbing than that alleged here has been held insufficient to permit the granting of a new trial. *E.g., United States ex rel. Kirk v. Petrelli,* 331 F.Supp. at 795 (prosecutor suggested that defense witnesses were paid for their testimony, that defense attorneys used a doctrine espoused by Adolf Hitler, and that jurors had a chance to show the community that they "don't tolerate senseless killing"). We therefore find that, viewed in the context of the trial as a whole, any prejudicial effect which the prosecutor's remarks about the Latin Kings may have had is insufficient to constitute a violation of petitioner's Fourteenth Amendment rights.

The other comments by the prosecutor to which the petitioner objects do not merit discussion. As the Supreme Court recently reiterated, the function of a habeas court is not to correct all errors made by a state prosecutor, only those "of constitutional dimension." *Smith v. Phillips,* 455 U.S. 209, 102 S.Ct. 940, 948, 71 L.Ed.2d 78 (1982); *see also Donnelly v. DeChristoforo,* 416 U.S. 637, 647–48, 94 S.Ct. 1868, 1873, 40 L.Ed.2d 431 (1974).

For the foregoing reasons, the judgment of the district court is reversed and the petition for a writ of habeas corpus is denied.