UNITED STATES of America ex rel.
Jerome KIRK, Petitioner,

v.

Odie WASHINGTON, Respondent.

No. 95 C 4762.

United States District Court,
N.D. Illinois,
Eastern Division.

July 10, 1996.

Anthony Pinelli, Chicago, IL, for Petitioner.

Arleen C. Anderson, Darryl Belmonte Simko, Attorney General's Office, Chicago, IL, for Respondent.

### MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Now before the court is a petition for a writ of habeas corpus submitted by petitioner Jerome Kirk ("Kirk"). For the reasons that follow, the court denies the petition.

## I. BACKGROUND

■ The facts underlying Kirk's conviction are those set out in the opinion of the Illinois Appellate Court on direct review, *People v. Kirk*, No. 1–92–3578, slip. op. (1st Dist. Sept. 16, 1994).[1] However, since the appellate court's opinion is unpublished, this court will recount the important facts here.

At his jury trial for murder, Kirk testified that the deceased and a man named Jesse approached Kirk while Kirk was sitting in his car. Kirk and the deceased began arguing. When Kirk attempted to get out of his car, the deceased hit him in the head and knocked him to the ground; when Kirk attempted to get up, the deceased knocked him down again. Kirk saw that the deceased had a knife. He ran towards his mother's house, followed by the deceased.

At some point, however, Kirk ran back to his car and got his gun from the trunk. He saw the deceased about 10 feet away and started to run away from the deceased, but the deceased followed him. When the deceased was about five feet away, he reached out with the knife, and Kirk shot him. As the deceased fell, Kirk continued shooting. Kirk testified that he shot the deceased because he was afraid the deceased might try to take the gun from him.

Robert Taylor testified for Kirk that when Kirk drove up, the deceased and another man approached Kirk's car. When Kirk got out of his car, the deceased hit Kirk in the jaw, and picked him up and slammed him to the ground. Kirk's mother intervened in the

fight. When the deceased pulled out a knife, Kirk ran around his car a few times and eventually was able to get his gun from his trunk. The deceased yelled, "Come here punk. Let me stab you." Kirk then began shooting.

Several other witnesses testified for the state. Their testimony indicated that Kirk was the aggressor. According to Sherry Kitchen, Kirk called the deceased over to Kirk's car. The two began arguing, and Kirk went to the trunk of his car and attempted to open it, but the deceased kept slamming the trunk down. Kirk had a crowbar in his hand and was swinging at the deceased when the deceased took out a knife from his pocket. Kirk's mother grabbed Kirk, and the two started to walk away. Sherry, the deceased, and Jesse also started to walk away.

Sheila Kitchen, Sherry's sister, testified that as Sherry, the deceased, and Jesse walked away, Sheila heard her mother yell to Sherry. Sherry and the deceased looked back, and saw Kirk running towards them waving the gun. The deceased did not have his knife out then. Sherry, Jesse, and the deceased started running to Sherry's porch, but the deceased was unable to reach the porch. The deceased ran to a nearby gangway, but the gate was locked, so he ran toward the street. Kirk was right behind him, with the gun. Sherry and Sheila saw the deceased fall near a parked car, and, while Kirk was standing over him, yell for Kirk not to kill him. Sherry and Sheila saw Kirk shoot the deceased twice, pause, and shoot three more times.

Walter Johnson also testified that before he heard Sherry and Sheila's mother yelling, he saw Kirk holding a gun and sneaking up on Sherry and the deceased. When the mother began yelling, Johnson ran down a gangway. He heard five shots as he was running, and when he exited the gangway, he saw the deceased lying next to a parked car.

After he was arrested, Kirk spoke with Detective Gerald Dorich, who testified that

---

1. Because Kirk does not challenge the facts set forth in the Illinois Appellate Court's opinion affirming his conviction and sentence, this court presumes that those facts are correct for pur-

poses of reviewing Kirk's habeas corpus petition. *See Sumner v. Mata*, 449 U.S. 539, 547, 101 S.Ct. 764, 769, 66 L.Ed.2d 722 (1981); *Smith v. Fairman*, 862 F.2d 630, 632 (7th Cir.1988).

Kirk told him that Kirk and the deceased began to argue and fight, but at some point, Kirk's mother stopped the fight. Dorich testified that Kirk first told him that Kirk then went to his car and got his gun, and resumed the fight with the deceased. During the fight, Kirk shot the deceased twice, then went to his mother's house and waited for the police. Kirk later told Dorich that after Kirk got the gun from his trunk, he ran down the street toward the deceased and shot him at least twice. Kirk never told Dorich that the deceased had a knife.

Before it began deliberating, the jury was instructed as to the mitigating factor of an unreasonable belief in the need for self-defense. The jury rejected the mitigating factor, and instead found Kirk guilty of first degree murder. The trial judge sentenced Kirk to 35 years in prison. Kirk appealed his conviction and sentence, both of which the appellate court affirmed. Kirk then filed a petition for leave to appeal to the Illinois Supreme Court, raising insufficiency of the jury instructions, ineffective assistance of his trial counsel, and prosecutorial misconduct as grounds for leave to appeal. The Illinois Supreme Court denied his petition for leave to appeal. *People v. Kirk*, 161 Ill.2d 534, 208 Ill.Dec. 365, 649 N.E.2d 421 (1995).

Kirk now brings his petition for writ of habeas corpus in this court pursuant to 28 U.S.C. § 2254, making the same arguments in support of his habeas petition that he made in his petition for leave to appeal.

## II.  *DISCUSSION*

As a preliminary matter, the court notes that Kirk has presented to the Illinois appellate and supreme courts all of the grounds on which he seeks habeas relief. Accordingly, Kirk has not procedurally defaulted any of his claims raised in his habeas petition, and the court will address each of his claims on its merits. *See Coleman v. Thompson*, 501 U.S. 722, 731–32, 111 S.Ct. 2546, 2555, 115 L.Ed.2d 640 (1991).

### A.  *Improper jury instructions*

■ Kirk contends that the trial court deprived him of a fair trial by failing to instruct the jury as to the mitigating factor of sudden and intense passion caused by another's provocation. This mitigating factor, if found by the jury to exist, would have served to reduce Kirk's conviction from one of first degree murder to one of second degree murder. Instead, the trial court instructed the jury only as to the mitigating factor of unreasonable belief in the need for self-defense, which the jury rejected. The state responds that no credible evidence supported giving the sudden and intense passion instruction.

■ Generally, a criminal defendant is entitled to have a jury instruction on any defense that provides a legal defense to the charge against him and has at least some foundation in the evidence. *United States ex rel. Peery v. Sielaff*, 615 F.2d 402, 403 (7th Cir.1979), *cert. denied*, 446 U.S. 940, 100 S.Ct. 2163, 64 L.Ed.2d 794 (1980) (citations omitted). However, also generally, the state trial court's failure " 'to instruct on a lesser offense fails to present a federal constitutional question and will not be considered in a federal habeas corpus proceeding.' " *Id.* at 404 (quoting *James v. Reese*, 546 F.2d 325, 327 (9th Cir.1976)).

■ Thus, to bring a habeas claim based on the trial court's failure to instruct on a lesser offense, the petitioner must allege a " 'fundamental defect which inherently results in a complete miscarriage of justice (or) an omission inconsistent with the rudimentary demands of fair procedure.' " *Peery*, 615 F.2d at 404 (quoting *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962)). Put another way, the question is "whether the 'ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.' " *Peery*, 615 F.2d at 404 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973)). Furthermore, where the issue before the habeas court is the omission of an instruction, "the petitioner's burden is 'especially heavy' because '(a)n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law.' " *Peery*, 615 F.2d at 404 (quoting *Henderson v. Kibbe*, 431 U.S. 145, 155, 97 S.Ct. 1730, 1737, 52 L.Ed.2d 203 (1977)).

In the case before this court, then, the question is whether the evidence supporting the giving of the sudden and intense passion due to provocation instruction was so strong that failure to give the instruction constituted a fundamental miscarriage of justice. *See Peery,* 615 F.2d at 404; *United States ex rel. Bacon v. DeRobertis,* 551 F.Supp. 269, 274 (N.D.Ill.1982), *aff'd,* 728 F.2d 874, 875 (7th Cir.) (adopting district court's opinion), *cert. denied,* 469 U.S. 840, 105 S.Ct. 143, 83 L.Ed.2d 82 (1984) (in both cases, the evidence of serious provocation was not so unequivocally strong that failure to give the instruction amounted to a fundamental miscarriage of justice).

On direct review of Kirk's conviction, the appellate court found that the evidence presented at trial did not support giving the sudden and intense passion instruction. That court stated:

.... Even accepting defendant's testimony as true, the [sudden and intense passion] instruction was not warranted in this case. According to defendant, the deceased was the initial aggressor, having beaten and kicked him numerous times as he exited his car. Defendant testified that when the deceased pulled out a knife, he ran toward his mother's house. However, rather than retreat to the house to escape the altercation, defendant ran back to his car, opened the trunk, and removed his gun. The deceased was not near defendant at this time.

After defendant retrieved the gun, he started walking down the street following Jesse until the deceased suddenly appeared allegedly wielding a knife. When the deceased reached out with his knife, defendant shot at him and continued to shoot even as the deceased fell. Defendant testified that he shot the deceased because he was afraid the deceased might try to take his gun from him.

The above scenario demonstrates anything but that defendant acted under a sudden and intense passion. Although the deceased may have been the initial aggressor, defendant could have retreated to the safe location of his mother's house or to the interior of his car, and ended the altercation. He chose not to do so, but and instead ran to his car, armed himself with a deadly weapon, and continued the confrontation. We find the suddenness requirement necessary for the instruction to be wholly lacking. The record clearly establishes that the defendant's theory at trial was that the killing was justified in self-defense. ·

*Kirk,* slip. op. at 9–10.

This court agrees with the appellate court that the evidence does not support the sudden and intense passion instruction. The evidence recounted above indicates that Kirk made a conscious decision to get his gun from the trunk of his car, and that some time lapsed between Kirk's initial confrontation with the deceased and the moment Kirk shot the deceased. Thus, the "sudden" aspect of the instruction was missing.

Moreover, a key element of Kirk's position is that he was engaged in mutual combat with the deceased, and that the mutual combat was sufficient provocation to warrant the sudden and intense passion by provocation instruction.[2] However, the record does not contain evidence of mutual combat.

▮ According to Illinois law, a trial court need not give an instruction on provocation as a mitigating factor where the defendant consistently testified that his actions were defensive and motivated by fear and the desire to escape from the victim. *People v. Slaughter,* 84 Ill.App.3d 1103, 1109, 40 Ill.Dec. 203, 209, 405 N.E.2d 1295, 1301 (1st Dist.1980); *People v. Lewis,* 229 Ill.App.3d 874, 881, 171 Ill.Dec. 562, 568, 594 N.E.2d 414, 420 (5th Dist.1992). "To warrant a 'provocation' instruction based upon mutual combat, the struggle must be mutual. Struggling with an attacker in an effort to ward off

---

2. Kirk does not point out to this court how he was provoked. However, in his petition for leave to appeal to the Illinois Supreme Court, he argued that "[m]utual combat, of the sort which occurred here, has been recognized as sufficient provocation to negate a finding of First Degree Murder." (Answer to Pet. for Writ of Habeas Corpus Ex. B at 7.) Thus, the court assumes that mutual combat remains Kirk's theory of provocation in this court. In any event, it appears that mutual combat is the only provocation that arguably could have occurred.

or defend one's self against an attack is not sufficient to warrant a provocation instruction." *Lewis,* 229 Ill.App.3d at 881, 171 Ill. Dec. at 568, 594 N.E.2d at 420. Thus, where no evidence presented at trial suggests that the defendant willingly participated in the struggle, the record " 'is devoid of evidence that [the] defendant acted under sudden and intense passion due to provocation' at the time of the [killing]," and the provocation instruction is not required. *Id.* (quoting *Slaughter,* 84 Ill.App.3d at 1109, 40 Ill.Dec. at 209, 405 N.E.2d at 1301). *See also People v. Villegas,* 222 Ill.App.3d 546, 558, 165 Ill. Dec. 69, 78, 584 N.E.2d 248, 257 (1st Dist. 1991) (citing *People v. Austin,* 133 Ill.2d 118, 125, 139 Ill.Dec. 819, 822, 549 N.E.2d 331, 334 (1989)) ("[m]utual combat is a fight or struggle which both parties enter willingly or where two persons, upon a sudden quarrel and in hot blood, mutually fight upon equal terms and where death results from the combat").

At trial, Kirk testified about the deceased's attack on him.[3] Nothing in Kirk's testimony indicates that Kirk fought back at any time, or willingly engaged in a struggle with the deceased. Rather, Kirk testified that he tried to flee from the deceased. Kirk did not testify why he got his gun from his car, but he testified that he shot the deceased because he feared that the deceased would try to take away his gun.

Thus, Kirk consistently testified that his actions were defensive and motivated by fear and the desire to escape from the deceased. *See Slaughter,* 84 Ill.App.3d at 1109, 40 Ill. Dec. at 209, 405 N.E.2d at 1301; *Lewis,* 229 Ill.App.3d at 881, 171 Ill.Dec. at 568, 594 N.E.2d at 420. According to Kirk's testimony, the struggle between him and the deceased was not mutual; in fact, it was not a struggle, but rather was an attack by the deceased on Kirk and an attempt by Kirk to defend himself. *See Lewis,* 229 Ill.App.3d at 881, 171 Ill.Dec. at 568, 594 N.E.2d at 420. Therefore, under Illinois law, the trial record contained insufficient evidence of provocation

to warrant the sudden and intense passion instruction.

Furthermore, while Kirk testified that he was afraid, neither his nor other witnesses' testimony indicated that Kirk acted out of any of the emotions that would have entitled him to the sudden and intense passion instruction, such as rage, anger, hatred, resentment, or terror. *See People v. Ford,* 163 Ill.App.3d 497, 503, 114 Ill.Dec. 611, 615, 516 N.E.2d 766, 770 (1st Dist.1987). Thus, nothing in his testimony indicated that he acted under sudden and intense passion due to provocation. *See id.*

Accordingly, it appears that the trial court did not even err in not giving an instruction on the mitigating factor of sudden and intense passion due to provocation. If the trial court did not err in failing to give the instruction, the trial court's failure to give the instruction certainly was not a " 'fundamental defect' " that resulted in " 'a complete miscarriage of justice' " nor " 'an omission inconsistent with the rudimentary demands of fair procedure.' " *Peery,* 615 F.2d at 404 (quoting *Hill,* 368 U.S. at 428, 82 S.Ct. at 471). This is especially true in light of the fact that the trial court instructed the jury on the mitigating factor of an unreasonable belief in the need for self-defense, which was far more consistent with Kirk's trial testimony than the sudden and intense passion instruction.

However, as he did on direct appeal, Kirk argues that the trial judge saw evidence of provocation and passion. At Kirk's sentencing, the trial judge stated:

> When a judge sits and hears a case, the judge, who is not the trier of fact, hears exactly the same evidence that the trier of fact does. Before the jury deliberated, I made this notation in my book. This is a very close case between second degree and not guilty. I would find the defendant guilty of second degree because he went and got the gun in unreasonable belief or with a sudden and intense passion. I do believe the victim was the original aggressor.

*Kirk,* slip op. at 10. Kirk argues that this statement provides a finding sufficient to

---

**3.** The court bases its opinion only on Kirk's testimony because the state's witnesses' testimony, if credible, defeats any mitigating instruction. The state's witnesses testified essentially that Kirk was the aggressor and chased down and shot the deceased.

prove that the omitted instruction should have been given to the jury.

The appellate court rejected Kirk's argument. It noted that the fact that the deceased might have been the initial aggressor was not dispositive of whether Kirk acted under a sudden and intense passion when he shot the deceased. *Id.* Rather, the events that occurred after the initial altercation belied Kirk's claim that he shot the deceased in response to being overcome by a sudden and intense passion resulting from serious provocation. *Id.*

The appellate court also noted that the trial judge could have been reciting the language from the Illinois statute providing that both an unreasonable belief in the need for self-defense and sudden and intense passion caused by another's provocation can be mitigating factors. The appellate court stated that the trial judge

> could be understood to mean only that he saw evidence of an unreasonable belief in self-defense sufficient to support a finding of second degree murder. This is most likely the case since defendant never suggested at trial that he was acting under a sudden and intense passion when he shot the deceased and where he firmly maintained throughout the trial that he was acting in self-defense.

*Id.* at 10–11.

This court agrees with the appellate court to a certain extent. It is somewhat noteworthy that the trial judge made his notes in his book regarding finding Kirk guilty of second degree murder just before the jury began deliberating, and thus not long after he gave the instructions to the jury. If the trial judge had found evidence of the sudden and intense passion mitigating factor, then he might have given the instruction.

The point is, neither this court nor the appellate court knows what the trial judge meant by his statement at sentencing, and it makes no sense to hypothesize about it. In reviewing Kirk's habeas petition, this court has only the briefs in this court and the appellate court's opinion to go on. Similarly, the appellate court had only the trial record upon which to rely. Regardless of the trial judge's statement, then, the record before

the appellate court apparently convinced it that no credible evidence supported giving the sudden and intense passion instruction. Based on the appellate court's opinion and parties' briefs in this court, this court agrees.

### B. *Ineffective assistance of counsel*

■ Kirk argues that his trial counsel was constitutionally ineffective for failing to tender the sudden and intense passion mitigating instruction.

■ A petitioner raising the claim of ineffective assistance of counsel must show that counsel's performance was so deficient that counsel "was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The petitioner also must show that counsel's performance prejudiced the defense; that is, but for counsel's performance, the result of the proceeding probably would have been different. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.

■ When determining whether counsel's performance was defective, the court gives deference to counsel's decisions. A strong presumption exists that counsel's representation "falls within the wide range of reasonable professional assistance" and " 'might be considered sound trial strategy' ". *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065 (quoting *Michel v. State of Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)).

Because the court has found that the sudden and intense passion instruction was not constitutionally required, the court finds that Kirk's trial counsel was not constitutionally required to tender the instruction. Furthermore, the opinion of the appellate court makes clear that Kirk's trial counsel's strategy at trial was to raise Kirk's unreasonable belief in the need for self-defense, rather than sudden and intense passion due to another's provocation, as a mitigating factor. The evidence presented by the defense supported the self-defense mitigating factor, and the defense tendered an instruction regarding the unreasonable belief in the need for

self-defense as a mitigating factor. Thus, it appears to this court that Kirk's trial counsel's self-defense strategy was a sound one, although it ultimately was not successful.

Because Kirk's trial counsel did not commit an error that deprived Kirk of a fair trial, Kirk's trial counsel was not constitutionally ineffective.

## C. *Prosecutorial misconduct*

Kirk contends that the state's prosecutor engaged in misconduct by cross-examining Kirk about his first trial and by implying through cross-examination that Kirk had beaten his girlfriend.

Prior to the jury trial at issue in the habeas petition before the court, Kirk was convicted in a bench trial, but was granted a new trial. On cross-examination in the jury trial, the prosecutor impeached Kirk with prior testimony he gave in the earlier bench trial. While impeaching Kirk, the prosecutor referred to the "first trial" or "previous trial." (Mem. in Reply to Resp.'s Answer to Pet. for Habeas Corpus at 6–7.) The prosecutor also mentioned the first trial in closing argument. (*Id.*) Kirk argues that the references to the first trial were irrelevant and inappropriate, and that the prosecutor's tactics were prejudicial and denied Kirk a fair trial.

First, Kirk has not identified how his constitutional rights were violated by impeachment that mentioned the first trial. He has presented absolutely no evidence that the reference to the first trial resulted in any prejudice to him.

Second, the prosecutor was permitted to impeach Kirk with his prior testimony. *See People v. Duncan*, 173 Ill.App.3d 554, 557–58, 123 Ill.Dec. 422, 424, 527 N.E.2d 1060, 1062 (3d Dist.1988) (citing *Harrison v. United States*, 392 U.S. 219, 222–23, 88 S.Ct. 2008, 2010, 20 L.Ed.2d 1047 (1968)) (defendant's earlier trial testimony is generally admissible against defendant at a later trial; and even when defendant was granted a new trial because of ineffective assistance of counsel, defendant's earlier testimony may be used at the later trial to impeach defendant). Further, the court sees no prejudice to Kirk

in the prosecutor's putting the impeachment into context by referring to the fact that the impeaching statements were from an earlier trial.

Last, Kirk himself opened the door to the prosecutor's questioning and statements about the first trial. It was Kirk who first brought out that there had been a first trial, and used testimony from the first trial to impeach state's witnesses. *Kirk*, slip. op. at 11–12. If a party "opens up an inquiry concerning an issue, the other party may be allowed to introduce contradictory or explanatory evidence even though it would not have been admissible initially." *People v. Phillips*, 186 Ill.App.3d 668, 680, 134 Ill.Dec. 468, 476, 542 N.E.2d 814, 822 (1st Dist.1989) (citing *People v. Marino*, 80 Ill.App.3d 657, 666, 36 Ill.Dec. 71, 78, 400 N.E.2d 491, 498 (2d Dist. 1980)). Thus, "an accused cannot interject an issue into a case and then argue that it was error to bring the issue to the jury's attention." *Id.*

Consequently, the prosecutor did not engage in misconduct by impeaching Kirk with his prior testimony from the first trial, and by cross-examining Kirk based on evidence that Kirk himself injected into the trial.

Kirk also contends that the prosecutor's insinuation during cross-examination that Kirk had beaten his girlfriend denied Kirk due process of law. During cross-examination of Kirk, the following exchange occurred:

Q: How did you get talking about him beating on his girlfriend?

A: Because of some of the questions he was asking me and about the car, and I was saying to him that that was my personal business, and I didn't feel that it warranted him intervening. It wasn't like he was her brother or something.

Q: So you're telling us that he wasn't upset about you beating on your girlfriend?

A: I never beated on her.

Q: You never beat on your girlfriend?

MR. SPENCE: Objection.

THE COURT: Objection sustained.

(Mem. in Reply to Resp.'s Answer to Pet. for Habeas Corpus at 5.) Kirk argues that this

questioning was prejudicial and improper, and a deliberate attempt to prejudice the jury.

The court tends to agree with the appellate court that Kirk's answer to the prosecutor's questions could have given the prosecutor the impression that the deceased was upset at Kirk because Kirk was beating his girlfriend, and that the prosecutor was merely attempting to clarify Kirk's testimony regarding his conversation with the deceased just prior to the shooting. *See Kirk,* slip. op. at 12. If this was the case, then Kirk opened the door to the prosecutor's questioning. See *Phillips,* 186 Ill.App.3d at 680, 134 Ill. Dec. at 476, 542 N.E.2d at 822 (citing *Marino,* 80 Ill.App.3d at 666, 36 Ill.Dec. at 78, 400 N.E.2d at 498).

However, because Kirk's answers to the prosecutor's questions were vague and did not explicitly refer to the deceased's belief that Kirk was beating his girlfriend, a chance exists that the prosecutor deliberately injected the issue into the trial. Thus, the court will analyze the prosecutor's actions as if this were the case.

 "Inflammatory, prejudicial statements made … or elicited by … a state prosecutor, evidencing a desire to improperly prejudice the defendant, may be serious enough to warrant federal habeas corpus relief." *Rose v. Duckworth,* 769 F.2d 402, 405 (7th Cir.1985) (citing *United States ex rel. Clark v. Fike,* 538 F.2d 750, 760 (7th Cir. 1976), *cert. denied,* 429 U.S. 1064, 97 S.Ct. 791, 50 L.Ed.2d 781 (1977)).

To constitute a constitutional error, prosecutorial misconduct that does not violate a specific provision of the Bill of Rights must have been " 'so egregious that it deprived the defendant of a fair trial, thus making the resulting conviction a denial of due process.' " *Rose,* 769 F.2d at 405 (quoting *United States ex rel. Shaw v. DeRobertis,* 755 F.2d 1279, 1281 (7th Cir.1985)). To determine the effect of the alleged prosecutorial misconduct, the court must consider the erroneous acts in the context of the entire trial. *Rose,* 769 F.2d at 405 (citing *United States ex rel. Garcia v. Lane,* 698 F.2d 900, 902 (7th Cir.1983)).

After the prosecutor asked Kirk if he beat his girlfriend, Kirk denied that he did.

Kirk's counsel immediately objected to the questioning, and the trial court sustained the objection. After the trial judge sustained the objection, the prosecutor abandoned the line of questioning, and did not refer to it in his closing argument. The trial judge later instructed the jury to disregard all questions to which objections were sustained. *Kirk,* slip. op. at 12–13.

In this context, the court fails to see how the prosecutor's short and single question about Kirk's beating his girlfriend deprived Kirk of a fair trial such that his conviction was a denial of due process. The error was corrected and not repeated. Moreover, the evidence at trial was more than sufficient to support Kirk's conviction of first degree murder. Thus, this court would be hard-pressed to find that Kirk's conviction was a denial of due process.

Accordingly, the court finds that any prosecutorial misconduct that might have occurred, which is doubtful, was not so egregious that it deprived Kirk of a fair trial and made his conviction a denial of due process.

### III. *CONCLUSION*

For the reasons set forth above, petitioner Jerome Kirk's petition for a writ of habeas corpus is denied.